**CONSTRUCTION AGGREGATES, INC., Plaintiff,**

v.

**SENIOR COMMODITY COMPANY, S.A.M., Riny Doyle, Defendants.**

No. 1:94 CV 86.

United States District Court,
E.D. Texas,
Beaumont Division.

Aug. 22, 1994.

Carl A. Parker, Law Offices of Carl A. Parker, Port Arthur, TX, Craig H. Cavalier, Brochstein Slobin Chapman & Cavalier, Houston, TX, for plaintiff.

Innes Alexander MacKillopp, Walter Joseph Gallant, Brown Sims Wise & White, Houston, TX, for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DOYLE'S MOTION TO DISMISS FOR LACK OF JURISDICTION OVER THE PERSON

SCHELL, Chief Judge.

CAME ON TO BE CONSIDERED Riny Doyle's Motion to Dismiss for Lack of Jurisdiction Over the Person pursuant Fed. R.Civ.P. 12(b)(2). The court, after considering the Motion, the response, and the supplemental briefing by both parties, is of the opinion that the motion should be GRANTED.

Construction Aggregates, a Texas corporation, entered into an agreement with Senior Commodity, a business association incorporated and principally doing business in Monaco, whereby Construction Aggregates would sell and Senior Commodity would buy petroleum coke. Dan Orsini signed on behalf of Construction Aggregates. Riny Doyle signed on behalf of Senior. Construction Aggregates claims the contract was breached

by, and claims fraud and misrepresentation on the part of, Senior and Doyle.

 Plaintiff wishes this court to assert personal jurisdiction over Doyle, a citizen of Monaco. Plaintiff bears the burden of establishing a prima facie case of personal jurisdiction over Doyle. *Bullion v. Gillespie*, 895 F.2d 213, 216–17 (5th Cir.1990). Proof by a preponderance of the evidence is not required. *Id.* at 217. Uncontroverted allegations in the plaintiff's complaint are taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case of personal jurisdiction exists. *Id.* As this court sits in Texas, personal jurisdiction may be exercised within the full limits of the Constitution. *Id.* at 215–16.

 Constitutional due process requires "minimum contacts" by the nonresident defendant with the forum state and that jurisdiction over the nonresident would not offend "traditional notions of fair play and substantial justice." *Id.* at 216. Minimum contacts can arise incident to a federal court's "general" or "specific" jurisdiction over a nonresident defendant. *Id.* General jurisdiction is proper where the nonresident defendant maintains "continuous and systematic" contacts with the forum state. *Id.* Specific jurisdiction may arise from the nonresident defendant's contacts with the forum which give rise to the cause of action. *Stuart v. Spademan*, 772 F.2d 1185, 1190 (5th Cir. 1985). Even if minimum contacts are shown, the court must also consider factors weighing on traditional notions of fair play and substantial justice. *See Bullion*, 895 F.2d at 216 n. 5.

Plaintiff was given the chance to conduct discovery on the issue of personal jurisdiction over Doyle. After discovery, plaintiff can point to two sets of contacts with the State of Texas. First, the contract at issue was drafted in Texas, sent to Monaco, signed by Doyle on behalf of Senior, and sent back to Texas. Contract performance—or nonperformance—occurred in Texas. Second, Doyle individually owns a limited partnership interest in Texas.

### Specific Jurisdiction

Specific jurisdiction over the person of a nonresident defendant occurs when the nonresident purposefully avails himself of the privilege of conducting activities in the forum state and the cause of action relates to the intra-forum acts. For instance, a contract entered into by a nonresident with a resident can, along with its attendant circumstances, subject the nonresident to jurisdiction over his person when the lawsuit concerns or arises out of the contract. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479–80, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985); *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).[1]

The signature line for Senior in the contract[2] sub judice reads:

ACCEPTED THIS (9th) DAY OF APRIL, 1992.

BY (signature)

SENIOR COMMODITY COMPANY

The signature is that of Riny Doyle. The first paragraph of the contract recites:

THIS WILL CONFIRM THE AGREEMENT MADE ON 4/09/92 BETWEEN WILLIAM SCOTT OF CONSTRUCTION AGGREGATES ("SELLER") AND RINY DOYLE OF SENIOR COMMODITY COMPANY ("BUYER") WHEREBY CONSTRUCTION AGGREGATES AGREES TO SELL AND SENIOR AGREES TO PURCHASE UNDER THE FOLLOWING TERMS AND CONDITIONS.

Looking to the objective manifestation of the parties' intent as evidence by the clear terms of the contract, Doyle signed solely as Sen-

---

1. The Cajun Cabins investment cannot support specific personal jurisdiction because this contact did not give rise to the causes of action. *See infra* at note 6.

2. Other contracts were performed in Texas. However, these contracts were all apparently entered into by Doyle in his representative capacity, and thus under the fiduciary shield doctrine, detailed *infra*, these contacts do not count towards Doyle's individual minimum contacts analysis for general jurisdiction.

ior's agent. Doyle did not objectively evince a desire to be bound by the contract in his individual capacity.

 While the mere fact of employment with a corporation is insufficient to insulate an employee from personal jurisdiction, "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation." *Stuart v. Spademan,* 772 F.2d 1185, 1197 (5th Cir. 1985).[3] This doctrine, termed the fiduciary shield doctrine, has no application if the corporation is an alter ego of the corporate officer.[4] *Id.*

 The uncontroverted record shows that this contact with the state—negotiating the contract, returning the signed contract to Texas, and performing the contract—was done solely in Doyle's capacity as a corporate officer. Construction Aggregates has not argued that the corporate entity should be disregarded. However, evidence has been supplied, in the form of Doyle's deposition testimony, which must be considered in this analysis anyway. Doyle is, in effect, the sole shareholder. Dep. Doyle at 11. He admits that he effectively has sole control over the corporation. Dep. Doyle at 20. He individually engaged in the Cajun Cabins investment, described infra, to further Senior's interests.[5] Dep. Doyle at 28–29. On the other hand, Construction Aggregates failed to supply evidence that Senior is undercapitalized, that its corporate formalities are not observed, or that Doyle has otherwise intermingled his individual affairs and finances with those of Senior. *See Stuart,* 772 F.2d at 1197 (discussing disregarding corporate existence in jurisdictional inquiries). Even though the jurisdictional alter ego test for attribution of contacts is less stringent than that for establishing substantive liability, *Stuart,* 772 F.2d at 1198 n. 12, and even though the plaintiff need not prove his prima facie case of jurisdiction by a preponderance standard, *Bullion,* 895 F.2d at 217, the court feels that Construction Aggregates has not adequately shown that Senior Commodity's corporate existence should be disregarded.

Thus, Doyle's contacts made in connection with the contract do not count in determining whether the court has jurisdiction over him. Specific jurisdiction cannot be shown, and plaintiff must prove general jurisdiction to prevail.

### General Jurisdiction

Plaintiff also relies on jurisdiction over Doyle due to Doyle's investment in Cajun Cabins, a motel located on Pleasure Island, near Port Arthur, Texas. It must be emphasized that plaintiff's causes of action do not relate to the Cajun Cabins investment.[6] Rather, plaintiff argues that the investment makes Doyle generally present within the jurisdiction. The court disagrees.

Both parties agree that Doyle is a limited partner in Cajun Cabins, Limited, a Texas limited partnership owning and commercially using real property in Texas. Doyle possesses a right to ten percent of any profits from the partnership. Doyle has inspected the property on one occasion.

Jurisdictional assertions based on ownership of property within the forum must meet the traditional "minimum contacts" test. *Shaffer v. Heitner,* 433 U.S. 186, 213, 97 S.Ct. 2569, 2584, 53 L.Ed.2d 683 (1977) (a quasi-in rem case). Where the property has no con-

---

3. This rule has been recognized by various Texas appellate courts. *E.g., Leon Ltd. v. Albuquerque Commons Partnership,* 862 S.W.2d 693, 708 (Tex. App.—El Paso 1993, no writ); *Ross F. Meriwether & Assoc., Inc. v. Aulbach,* 686 S.W.2d 730, 731 (Tex.App.—San Antonio 1985, no writ); *see also Bass v. Metzger,* 569 S.W.2d 917, 926 (Tex.Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.).

4. Further elaboration on the fiduciary shield doctrine may be found in *Saktides v. Cooper,* 742 F.Supp. 382 (W.D.Tex.1990).

5. Doyle testified that Senior did not make the investment because it would be ultra vires. Dep. Doyle at 32.

6. In his deposition, Doyle testified that he individually invested in Cajun Cabins to further Senior's interests. Dep. Doyle at 28–29. However, the causes of action alleged by plaintiff spring from breach of a specific contract; they do not arise out of or relate to the Cajun Cabins investment. The Cajun Cabins investment is collateral to the causes of action and thus cannot confer specific personal jurisdiction.

nection to the cause of action, the presence of the property will not serve to confer jurisdiction by itself but may suggest the existence of other ties among the defendant, the state, and the litigation. *Id.* at 210, 97 S.Ct. at 2582. The presence of property within the forum is, of course, a contact, but the court still lacks jurisdiction "unless there are sufficient contacts to satisfy the fairness standard of *International Shoe.*" *Rush v. Savchuk,* 444 U.S. 320, 329, 100 S.Ct. 571, 577, 62 L.Ed.2d 516 (1980), *referring to International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

In *Shaffer* the trial court based its assertion of jurisdiction solely on the presence of property within the forum. The property did not give rise to and was not the subject matter of the litigation. In holding that the exercise of personal jurisdiction over the nonresident defendants offended due process, the Supreme Court noted that it strained reason to suggest that anyone buying securities in a corporation impliedly consented to any and all suits brought in the company's state of incorporation. *Id.* at 216, 97 S.Ct. at 2586.

■ This case is factually similar to *Shaffer.* The only tie Doyle has to Texas in his individual capacity is the ownership of property within the state. The property did not give rise to and was not the subject-matter of the litigation. And it strains reason to infer that anyone buying a limited partnership interest as a passive investment in a Texas limited partnership impliedly consents to or expects to be haled into court on any and all suits brought in Texas. *See also Grimes v. Vitalink Communications Corp.,* 17 F.3d 1553, 1559 (3rd Cir.1994) (discussing whether stock ownership alone is sufficient for specific jurisdiction or general jurisdiction over nonresident defendant in state of incorporation), *petition for cert. filed,* 63 U.S.L.W. 3010 (U.S. June 29, 1994) (No. 93–2098).

The investment is, of course, systematic and continuous. But on a relative scale it is too insignificant to create a reasonable expectation that Doyle would be haled into a Texas court. The court is mindful of *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). There the Supreme Court held that mere purchases, even if occurring at regular intervals, are not enough to warrant an assertion of jurisdiction over a nonresident in a cause of action not related to the purchases. *Id.* at 419, 104 S.Ct. at 1874. And this court considers the purchases in *Helicopteros*—approximately four millions dollars worth of helicopters and related sales over an eight year period—more substantial than Doyle's passive limited investment. Furthermore, in *Dalton v. R & W Marine, Inc.,* 897 F.2d 1359 (5th Cir.1990), a defendant owned boats which were bareboat chartered to related Louisiana entities. While the boats—which defendant still owned, and which were yielding revenue—were present in Louisiana, the defendants contacts with Louisiana were "not *sufficiently* systematic and continuous to constitute a general presence in the state." *Id.* at 1362 (emphasis supplied).

If the limited partnership engaged in more business in Texas—both in scope and magnitude—and if Doyle had significant control over Cajun Cabins, haling Doyle into court in Texas based on a general presence theory might not offend due process. *Cf. Plumb v. Cottle,* 492 F.Supp. 1330, 1335 (D.Del.1980) (derivation of substantial revenue within state is sufficient to maintain personal jurisdiction, even in cases involving causes of action otherwise unrelated to those minimum contacts). But as the record now stands, plaintiff cannot establish even a prima facie case of general personal jurisdiction over Doyle.

■ Plaintiff provides several cases to advance its proposition that ownership of local property for profit creates personal jurisdiction over the investor. Each case is distinguishable. Plaintiff first relies upon *Gurley v. Lindsley,* 459 F.2d 268 (5th 1972), *mandate withdrawn in unpertinent part,* 466 F.2d 498 (5th Cir.1972). In *Gurley* the cause of action both arose out of and apparently resolved interests in the property conferring jurisdiction. Thus, specific jurisdiction was

present. *Eubanks Heights Apartments, Ltd. v. Lebow*, 615 F.2d 571 (1st Cir.1980) is equally inapposite in that the cause of action there accrued from the contacts with the forum.[7] *General Electric Co. v. Brown & Ross Int'l Distributors, Inc.*, 804 S.W.2d 527 (Tex.App.—Houston [1st Dist.] 1990, writ denied) also had "specific contacts which gave rise to the suit." *Id.* at 532. Where the cause of action relates to or arises out of ownership of local property, then finding personal jurisdiction over the nonresident owner generally does not offend due process. But these cases do not hold that such a defendant is "generally present" so that he may be sued within the forum by anyone on any cause of action.

Plaintiff's best case is *Schlobohm v. Schapiro*, 784 S.W.2d 355, 359 (Tex.1990). *Schapiro* did find general jurisdiction over an investor in a Texas business. However, the court believes that the contacts establishing jurisdiction over Schapiro were dissimilar to Doyle's individual contacts with Texas in that Schapiro's contacts were active, involved, and not limited to a mere passive investment.

Neither general nor specific jurisdiction over Doyle has been shown. Thus, Doyle's Motion to Dismiss for Lack of Jurisdiction Over the Person pursuant Fed.R.Civ.P. 12(b)(2) is GRANTED.

SIGNED this 19th of August, 1994.

---

[7]. The plaintiff sued the nonresident defendant to collect promissory notes. The promissory notes were executed in connection with defendant becoming an investor in a Texas limited partnership. Thus, executing a promissory note in Massachusetts was apparently part of a larger interstate agreement whereby a Texas limited partnership interest was exchanged for a promissory note. The cause of action, therefore, arose out of or was related to the contact with the forum.