**Beverly HOUSE, Individually and as Representative of the Estate of Mary E. Newman**

v.

**22 TEXAS SERVICES, INC. (F/K/A 22 Texas Partners, Inc.); 22 Texas Partners Management, Inc.; Complete Care Services, L.P.; Arizona Partners, Inc.; John H. Durham; Peter J. Licari; Michael D. D'Arcangelo; John P. Durham; and Carol Durham.**

No. Civ.A. G–98–421.

United States District Court, S.D. Texas, Galveston Division.

Aug. 9, 1999.

David A Jameson, Attorney at Law, Galveston, TX, for David Jameson, mediator.

Michael David Sydow, Verner Liipfert et al, Houston, TX, Richard Lee Melancon, Melancon and Hogue, Friendswood, TX, for Beverly House, Individually and as representative of the estate of Mary E. Newman, Mary E Newman, Deceased, plaintiffs.

William S Bush, Bush & O'Brien, Houston, TX, James Richard O'Brien, Bush & O'Brien, Houston, TX, H Mark Burck, Burck Lapidus et al, Houston, TX, for 22 Texas Services Incorporated fka 22 Texas Partners Incorporated, 22 Texas Partners Management Incorporated, Complete Care Services, L.P., Arizona Partners Inc, John H Durham, Peter J Licari, Michael D D'Arcangelo, John P Durham, Carol Durham, defendants.

William S Bush, Bush & O'Brien, Houston, TX, for Wallace Cannon, Bob Sorenson, defendants.

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

KENT, District Judge.

In this case, Plaintiff seeks compensatory and punitive damages for the alleged wrongful death of her mother. Plaintiff's mother, a resident of one of Defendants' nursing homes until shortly before her death, allegedly died as a result of the negligence of the nursing home staff and administration. Plaintiff filed this claim against Defendants on August 11, 1998. On September 9, 1998, Defendants Arizona Partners, Inc., John H. Durham, Peter J. Licari, Michael D. D'Arcangelo, John P. Durham, and Carol Durham filed a Motion to Dismiss for Lack of Personal Jurisdiction. Citing ongoing discovery difficulties, Plaintiff filed a motion to Extend Time to Respond to Defendants' Motion to Dismiss. The Court granted Plaintiff's Motion pending resolution of the discovery problems. On February 1, 1999, Plaintiff filed her First Amended Complaint, adding Defendants Wallace Cannon and Bob Sorenson. On April 7, 1999, Defendants Cannon and Sorenson filed a Motion to Dismiss for Lack of Personal Jurisdiction. The Court again granted Plaintiff an extension. On May 14, 1999, Plaintiff filed a Second Amended Complaint, adding Defendant Christine Bogrette. On July 27, 1999, Defendant Bogrette filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction. Plaintiff has now filed a compre-

hensive Supplemental Response to all Defendants' Motions to Dismiss for Lack of Personal Jurisdiction. The issue is now ripe for resolution by the Court. For the reasons set forth below, Defendants' Motions to Dismiss for Lack of Personal Jurisdiction are **DENIED IN PART, GRANTED IN PART.**

## I. FACTUAL SUMMARY

### 1) The Underlying Incident

At the time of her death, Mary Newman was a resident at Caldwell Health & Rehabilitation Center ("Caldwell"). In late 1997, Ms. Newman began experiencing painful health problems, among them stomach pain, nausea, and vomiting. Her appetite also decreased. Despite these symptoms, Ms. Newman apparently received little attention. By December 7, 1997, records indicate, her symptoms had worsened to include a dark, foul smelling drainage issuing from her mouth. Evidence shows that when a nurse on duty that evening entered Ms. Newman's room and noticed this symptom, he stated that he didn't know what was wrong and left her room without taking any action. It was not until eleven hours later that a nurse on the night shift, upon detecting more of the dark discharge, made a decision to seek treatment. Ms. Newman was taken to a hospital. There, the treating physician determined that she suffered from a severe fecal impaction in her sigmoid colon. The physician also determined that she was suffering from sepsis, anemia, and dehydration. Over the course of several days, the hospital was able to disimpact Ms. Newman's colon. During a later colonoscopy, however, the treating physician noted the presence of severe ulcerations in Ms. Newman's sigmoid colon, apparently related to the impaction. Ms. Newman ultimately died from complications.

Evidence indicates that the facts surrounding Ms. Newman's death may have been indicative of a broader problem at Caldwell. In October 1997, investigators with the Texas Department of Human Services inspected Caldwell and found numerous health violations. Some of the problems identified by TDHS investigators included a shortage of qualified staff, instances of residents being left to lie in feces and urine for long periods of time, instances of residents not receiving baths or oral care, and a lack of adequate precautions to prevent the spread of antibiotic-resistant infections. TDHS investigators completed their survey in October and provided copies to Caldwell administrators, who then forwarded the copies to management at the area and corporate levels.

### 2) Individual Defendants' Ties to Caldwell

Caldwell is one of 49 nursing homes and assisted living facilities in Texas owned by Defendant 22 Texas Services, L.P. In June 1997, Defendant John H. Durham had asked Defendant Complete Care Services, L.P. ("CCS") to perform operational due diligence for all of those facilities in anticipation of possible purchase from then-owner Beverly Enterprises. CCS eventually purchased the 49 nursing homes for approximately $152 million, then assigned its complete ownership interest in the homes to 22 Texas Services, L.P. In return for the transfer of interest, 22 Texas Services, L.P. provided CCS a "development fee" and an exclusive twenty-year management contract to manage the homes. Under that contract, CCS employs key management personnel at each home, while 22 Texas Services, L.P. employs the other staff members.

Defendant CCS, Caldwell's management company, is a limited partnership formed under the laws of Pennsylvania. CCS has one general partner, Arizona Partners, Inc. ("Arizona Partners"), a Pennsylvania corporation. CCS's limited partners are Defendants John H. Durham, John P. Durham, Christine Bogrette, Peter Licari, Michael D'Arcangelo, and Venture 22 Corporation ("Venture 22"), of which John H. Durham is the sole shareholder. According to the limited partnership agreement,

Arizona Partners has a 1 percent interest in CCS and is responsible for the partnership business and the liabilities arising out of the partnership business.[1] John P. Durham and Bogrette are the sole shareholders of Arizona Partners; John H. Durham is the president; Licari, D'Arcangelo, John P. Durham, and Robert Sorenson are vice presidents; Carol Durham is secretary; and John P. Durham, D'Arcangelo, and Sorenson are assistant secretaries. Tax records indicate that Arizona Partners, which lists its business address at 120 Gibralter Road, pays no rent or expenses for repairs or maintenance. Nor does it spend any money on advertising. Arizona Partners had no cash assets in 1996 or 1997, and it reported that its net worth in 1997 was $42,132.

Caldwell is owned by 22 Texas Services, L.P., a limited partnership formed under the laws of Texas.[2] 22 Texas Services, L.P. has one general partner, 22 Texas Services, Inc., a Pennsylvania corporation. The limited partners of 22 Texas Services, L.P. are John P. Durham, who owns a 30 percent interest, John H. Durham, with a 21 percent interest, and Licari and D'Arcangelo, who each own a 9 percent interest. Under the limited partnership agreement, general partner 22 Texas Services, Inc. owns a 1 percent interest in 22 Texas Services, L.P. and is solely responsible for conducting the partnership business and for liabilities arising out of the partnership business.[3] John H. Durham and Carol Durham are the sole shareholders of 22 Texas Services, Inc.; John H. Durham also serves as president and sole director; John P. Durham, Licari, and D'Arcangelo are vice presidents; and Carol Durham is secretary. Tax records indicate that 22 Texas Services, Inc., which like Arizona Partners lists its address as 120 Gibralter

Road, pays no rent or expenses for repair or maintenance, has no employees or expenses for employees, and pays no costs for advertising. In 1997, 22 Texas Services, Inc. showed total assets of $54,955; in 1997, it showed a total loss of $80,399.

## II. ANALYSIS

Defendant Arizona Partners, Inc. is a Pennsylvania corporation with its principal place of business in a state other than Texas.[4] Defendant John H. Durham is president and treasurer of Arizona Partners and a shareholder, sole director, and president of Defendant 22 Texas Services, Inc. Defendant John P. Durham is a shareholder, vice president, and assistant secretary of Arizona Partners and a vice president of 22 Texas Services, Inc. Defendant Peter Licari is a vice president of both Arizona Partners and 22 Texas Services, Inc. Defendant Michael D'Arcangelo is a vice president and assistant secretary of Arizona Partners and a vice president of 22 Texas Services. Defendant Carol Durham is secretary of Arizona Partners and a shareholder and secretary of 22 Texas Services, Inc. Defendant Wallace Cannon is or was the director of operations for Caldwell and was an officer of CCS, Arizona Partners, and 22 Texas Services, Inc. Defendant Bob Sorenson is or was chief financial officer of Caldwell and was an officer of CCS, Arizona Partners, and 22 Texas Services, Inc. Defendant Christine Bogrette is or was a shareholder in Arizona Partners. All of these defendants now seek dismissal pursuant to Fed.R.Civ.P. 12(b)(2) contending that this Court lacks personal jurisdiction over them.

■ In Federal Court, personal jurisdiction over a nonresident defendant is proper if: (1) the defendant is amenable to

---

1. The partnership business is the management of long-term health care facilities in several regions of the United States, including Texas, where Arizona Partners manages 115 facilities.

2. 22 Texas Services, L.P. was formerly known as 22 Texas Partners, L.P.

3. The partnership business of 22 Texas Services, L.P. is the ownership and operation of more than 40 nursing homes in Texas.

4. Neither Plaintiff nor Defendants have identified the precise state in which Defendant Arizona Partners, Inc. maintains its principal place of business.

service of process under the forum state's long-arm statute; and (2) the exercise of personal jurisdiction over the defendant is consistent with due process. *See Jones v. Petty–Ray Geophysical Geosource, Inc.,* 954 F.2d 1061, 1067 (5th Cir.1992). The Texas long-arm statute authorizes service of process on a nonresident defendant if the defendant is determined to be "doing business" in Texas. *See* Tex.Civ.Prac. & Rem.Code Ann. § 17.042. Because the phrase "doing business" has been interpreted to reach as far as the United States Constitution permits, the jurisdictional inquiry under the Texas long-arm statute collapses into a single due-process inquiry. *See Ruston Gas Turbines, Inc. v. Donaldson Co.,* 9 F.3d 415, 418 (5th Cir.1993).

Whether the exercise of personal jurisdiction over Defendants is consistent with the Due Process Clause of the United States Constitution likewise requires a two-pronged inquiry. First, the Court must conclude that Defendants have "minimum contacts" with Texas. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Second, the Court must determine that requiring Defendants to litigate in Texas does not offend "traditional notions of fair play and substantial justice." *Id.; see also Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir.1994); *Ruston,* 9 F.3d at 418. The "minimum contacts" aspect of due process can be satisfied by either finding specific jurisdiction or general jurisdiction. *See Wilson,* 20 F.3d at 647. If the conduct of a defendant that supports personal jurisdiction is related to a stated cause of action, personal jurisdiction is known as "specific jurisdiction." *See Ruston Gas Turbines,* 9 F.3d at 418–19; *Villar v. Crowley Maritime Corp.,* 990 F.2d 1489, 1496 (5th Cir.1993). The minimum contacts prong for specific jurisdiction can be satisfied by a single act if the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (holding that a defendant establishes minimum contacts by purposely engaging in conduct directed toward the forum state "such that [the defendant] should reasonably anticipate being haled into court there"); *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958); *see also Bullion v. Gillespie,* 895 F.2d 213, 216 (5th Cir.1990) ("It is well settled that specific jurisdiction may arise without the nonresident defendant's ever stepping foot upon the forum state's soil. . . ."). Alternatively, if a defendant has insufficient contacts related to a stated cause of action to support specific jurisdiction, contacts unrelated to the cause of action may confer general jurisdiction. However, these contacts with the foreign state must be both "continuous and systematic" and "substantial." *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984); *Villar,* 990 F.2d at 1496.

At the outset, the Court notes that although the burden is on Plaintiff, she need only make a prima facie showing of jurisdiction, and her allegations in that regard are to be taken as true unless controverted; moreover, any conflicts are to be resolved in her favor. *See Asarco, Inc. v. Glenara, Ltd.,* 912 F.2d 784, 785 (5th Cir.1990). The Court will examine Plaintiff's arguments with respect to each of the Defendants.

1) *Jurisdiction Over Arizona Partners*

Plaintiff argues that Defendant Arizona Partners' activities in carrying out the business of Defendant CCS subject it to the specific jurisdiction of this Court. The Court agrees.

Arizona Partners, the sole general partner in Defendant CCS, is charged with carrying out the business of the partnership. That business includes the management of 49 nursing homes and assisted living facilities in Texas. The Court concludes as a matter of law that the operation of 49 nursing homes in the state of

Texas satisfies the minimum contacts standard.

 Having addressed the question of Defendant's contacts with the forum state, the Court must determine whether requiring Defendant to defend this suit in Texas would satisfy "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158. In determining this fundamental fairness issue, the Court must examine five factors: the defendant's burden; the forum state's interests; the plaintiff's interest in convenient and effective relief; the judicial system's interest in efficient resolution of controversies; and the state's shared interest in furthering fundamental social policies. *Ruston Gas Turbines*, 9 F.3d at 421.

Defendant Arizona Partners offers scant argument that exercise of jurisdiction over it would be unreasonable. Indeed, there appears to be little argument. Although Arizona Partners is a Pennsylvania corporation, it operates 49 nursing homes in Texas. On that basis, it appears that subjecting Arizona Partners to suit in this state would not be unduly burdensome. Similarly, this state has a weighty interest in seeing the resolution of a lawsuit concerning the health and safety standards of such a large number of nursing homes. Finally, the interests of both Plaintiff and the interstate judicial system would be advanced by litigating this action in this forum. Bench trial is set for August 16, 1999, dismissal of Plaintiff's action against Arizona Partners would certainly result in considerable delay. Given these factors, the Court concludes that exercising jurisdiction over Defendant Arizona Partners is consistent with traditional notions of fair play and substantial justice.

The exercise of specific jurisdiction over Defendant Arizona Partners satisfies both prongs of the due process test. Accordingly, Defendant Arizona Partners' Motion to Dismiss for Lack of Personal Jurisdiction is hereby **DENIED.**

### 2) *Jurisdiction Over John P. Durham and Christine Bogrette*

 Plaintiff advances two theories under which Defendant John P. Durham is subject to personal jurisdiction. First, in a theory that also applies to Defendant Christine Bogrette, Plaintiff argues that specific jurisdiction exists over these Defendants based on their roles as shareholders of Defendant Arizona Partners. Second, Plaintiff argues that negligent conduct on the part of John P. Durham subjects him to personal jurisdiction under *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984). The Court only finds it necessary to reach Plaintiff's first argument.

 All of Defendants John P. Durham and Bogrette's contacts with this forum are related to the actions of the various corporations and partnerships involved in the ownership and management of Caldwell and the other nursing homes. Insofar as those contacts are related to the acts of Defendant Arizona Partners, the fiduciary shield doctrine provides that those acts can be attributed to individuals for jurisdictional purposes only if the corporate entity can be disregarded to impose liability on the individuals. *See Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir.1985) (*citing* 4 Charles Alan Wright, Arthur Miller & Mary Kane, Federal Practice and Procedure: Civil § 1069 (Supp.1984) (stating that under the fiduciary shield doctrine, "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation")). This Court looks to the law of the state of incorporation for each corporate Defendant to determine whether its corporate entity should be disregarded. *See Amoco Chemical Co. v. Tex Tin Corp.*, 925 F.Supp. 1192, 1201 (S.D.Tex.1996) (*citing* Restatement (Second) of Conflict of Laws §§ 307, 309 (1971)). Defendant Arizona Partners was incorporated under the laws of Pennsylvania. Accordingly, the Court

will apply Pennsylvania law in determining whether it should disregard the corporate entity for jurisdictional purposes.[5]

■■■■ Under Pennsylvania law, there is a strong presumption against piercing the corporate veil. *See Lumax Industries, Inc. v. Aultman*, 543 Pa. 38, 669 A.2d 893, 894 (1995) (*citing Wedner v. Unemployment Board*, 449 Pa. 460, 296 A.2d 792, 794 (1972)) (warning that courts should respect the corporate entity in the absence of exceptional circumstances to avoid rendering the corporate entity theory "useless"). Factors to be considered in disregarding the corporate form include undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs, and use of the corporate form to commit a fraud. *See id.* at 895 (*citing Department of Environmental Resources v. Peggs Run Coal Co.*, 55 Pa. Cmwlth. 312, 423 A.2d 765 (1980)). The primary concerns for courts deciding whether to pierce the corporate veil are determining whether equity requires that the shareholders' "traditional insulation" from personal liability be disregarded and discerning whether the corporate form is essentially a sham. *See Village at Camelback Property Owners Assn. Inc. v. Carr*, 371 Pa.Super. 452, 538 A.2d 528, 532 (1988).

In this case, Arizona Partners had at the time of the incident underlying this action a net worth of approximately $42,000. In 1996 and 1997, it operated with virtually no liquid assets. At the same time, the corporation assumed 100 percent of the liability for the operation of not only 49 nursing homes in Texas but of numerous other facilities across the United States. More-over, Arizona Partners had no employees, office space, or expenses. There is clearly evidence to support the conclusion that Arizona Partners was undercapitalized, particularly considering the potential liabilities to which it was subject. Pennsylvania courts have cited undercapitalization as a basis for piercing the corporate veil. *See, e.g., Camelback*, 538 A.2d at 535; *Peggs Run*, 423 A.2d at 768–69. Here, the fact that Arizona Partners bore 100 percent of the liability for the operation of numerous nursing homes with virtually nothing in the way of assets argues strongly in favor of piercing the corporate veil. Accordingly, the Court will disregard the corporate entity of Arizona Partners.

■■■■ The Court now turns its attention to the due process aspect of subjecting Defendants John P. Durham and Bogrette to personal jurisdiction. Because the Court has disregarded the corporate entity of their company, Arizona Partners, its contacts are imputed to these two individual Defendants. The Court has already concluded that exercising personal jurisdiction over Arizona Partners comports with due process. Accordingly, it reaches the same conclusion with respect to these Defendants. The Motion to Dismiss for Lack of Personal Jurisdiction is thus **DENIED** with respect to Defendants John P. Durham and Bogrette.

### 3) *Jurisdiction Over John H. Durham and Carol Durham*

Plaintiff advances several theories under which Defendant John H. Durham is subject to this Court's personal jurisdiction. First, in a theory that also applies to De-

---

**5.** The Court notes that in the United States Court of Appeals for the Fifth Circuit, the corporate veil or alter ego test for attribution of contacts is less stringent than that for liability. *See Spademan*, 772 F.2d at 1198 n. 12 (*citing Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981)); *Saktides v. Cooper*, 742 F.Supp. 382, 386 n. 4 (W.D.Tex. 1990) (*citing Marine Midland*, 664 F.2d at 902; *Bulova Watch Co. v. K. Hattori & Co.*, 508 F.Supp. 1322, 1348 (E.D.N.Y.1981)) (noting a difference between the rules governing personal jurisdiction and those governing substantive tort liability with respect to corporate officers acting in a corporate capacity). The Court expresses no opinion on the issue of Defendants' substantive liability at this point. At trial, the Court will examine closely any evidence regarding the insurance policies of Defendants Arizona Partners and 22 Texas Services, Inc., and will be pleased to consider the testimony of expert witnesses as to questions of adequate capitalization.

fendant Carol Durham, Plaintiff argues that specific jurisdiction exists over these Defendants based on their roles as shareholders of Defendant 22 Texas Services, Inc. Second, Plaintiff argues that Defendant John H. Durham is subject to personal jurisdiction as a result of his heavy involvement as an investor in Defendant 22 Texas Partners, L.P. The Court only finds it necessary to reach Plaintiff's first argument.

As discussed above, the fiduciary shield doctrine prohibits the acts of one or more of the corporate Defendants from being imputed to an individual for jurisdictional purposes unless the corporate entity can be disregarded. *See Spademan,* 772 F.2d at 1197; 4 Wright, Miller & Kane, Federal Practice and Procedure § 1069. Because Defendant 22 Texas Services, Inc. was incorporated in Pennsylvania, the Court looks to that state's law to determine whether its corporate entity should be disregarded in order to impute its acts to Defendants John H. Durham and Carol Durham for jurisdictional purposes. *See Amoco,* 925 F.Supp. at 1201.

Under Pennsylvania law, disregard of the corporate entity is an exception to the general rule. *See Lumax Industries,* 669 A.2d at 894 (warning that courts should respect the corporate entity in the absence of exceptional circumstances to avoid rendering the corporate entity theory "useless"). Factors to be considered in disregarding the corporate form include undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs, and use of the corporate form to commit a fraud. *See id.* at 895. The primary concerns for courts deciding whether to pierce the corporate veil are determining whether equity requires that the shareholders' "traditional insulation" from personal liability be disregarded and discerning whether the corporate form is essentially a sham. *See Camelback Property Owners Assn.,* 538 A.2d at 532.

In this case, 22 Texas Services, Inc. owns 49 nursing homes and assisted living facilities in Texas. As the sole general partner in 22 Texas Services, L.P., it is entitled to only 1 percent of the partnership profits and at the same time assumes 100 percent of the partnership's liability. However, the net worth of 22 Texas Services, Inc. is negative, as it has more than $54,000 in liabilities with no net assets. The corporation pays no rent and has no employees or expenses. Based on the nature and risk of the nursing home business, the Court concludes that engaging in the ownership of 49 nursing homes while maintaining no net assets is prima facie evidence of undercapitalization. On that basis, the Court will disregard the corporate fiction of 22 Texas Services, Inc. All actions taken by 22 Texas Services, Inc. are therefore imputed to its shareholders, Defendants John P. Durham and Carol Durham, for purposes of personal jurisdiction.

The Court next turns its attention to the due process test for personal jurisdiction. Defendant 22 Texas Services, Inc. is a Pennsylvania corporation. The sole general partner in Defendant 22 Texas Services, L.P., 22 Texas Services, Inc. is charged with carrying out the business of the partnership. That business includes the ownership of 49 nursing homes and assisted living facilities in Texas. While Defendants CCS and Arizona Partners, Inc. are primarily responsible for the management of those facilities, 22 Texas Services, Inc. directly employs most of the non-administrative staff at Caldwell and the other facilities. Based on those facts, the Court concludes as a matter of law that the activities of Defendant 22 Texas Services, Inc. in Texas satisfy the minimum contacts standard. By imputation, the acts of individual Defendants John P. Durham and Carol Durham satisfy the minimum contacts standard as well.

Having addressed the question of their contacts with the forum state, the Court must determine whether requiring Defendants John P. Durham and Carol Durham to defend this suit in Texas would satisfy

"traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158. In determining this fundamental fairness issue, the Court must examine five factors: the defendant's burden; the forum state's interests; the plaintiff's interest in convenient and effective relief; the judicial system's interest in efficient resolution of controversies; and the state's shared interest in furthering fundamental social policies. *Ruston Gas Turbines,* 9 F.3d at 421.

Defendants offer no argument that exercise of jurisdiction over it would be unreasonable other than that they are protected by the fiduciary shield doctrine. Indeed, there appears to be little argument. Although 22 Texas Services, Inc. is a Pennsylvania corporation, it owns 49 nursing homes in Texas. On that basis, it appears that subjecting its shareholders to suit in this state would not be unduly burdensome. Similarly, this state has a weighty interest in seeing the resolution of a lawsuit concerning the health and safety standards of such a large number of nursing homes. Finally, the interests of both Plaintiff and the interstate judicial system would be advanced by litigating this action in this forum. Bench trial is set for August 16, 1999, dismissal of Plaintiff's action against Defendants John P. Durham and Carol Durham would certainly result in considerable delay with respect to them. Given these factors, the Court concludes that exercising jurisdiction over these Defendants is consistent with traditional notions of fair play and substantial justice.

The exercise of specific jurisdiction over Defendants John P. Durham and Carol Durham satisfies both prongs of the due process test. Accordingly, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is hereby **DENIED** with respect to Defendants John P. Durham and Carol Durham.

4) *Jurisdiction over Peter Licari and Michael D'Arcangelo*

 Plaintiff advances two theories under which Defendants Licari and D'Arcangelo are subject to personal jurisdiction.

First, Plaintiff argues that this Court has jurisdiction over these Defendants based on their roles as limited partners in CCS and 22 Texas Services; L.P., and as corporate officers in Arizona Partners and 22 Texas Services, Inc. Second, Plaintiff argues that they are subject to this Court's jurisdiction based on their own negligent conduct in the death of Ms. Newman. The Court only finds it necessary to reach Plaintiff's first argument.

Defendants Licari and D'Arcangelo do not appear to have been merely passive investors in a limited partnership. Plaintiff's evidence indicates that both Defendants had substantive roles in the running of the nursing homes owned by 22 Texas Services, L.P. and operated by CCS. For example, Defendants Licari and D'Arcangelo received facility operations reports from the individual home administrators and an operations report from company officials based in Arlington, Texas. These reports came each month. In addition, these Defendants participated in monthly teleconferences with Defendants John H. Durham, John P. Durham, Wallace Cannon, and Bob Sorenson in which Defendants discussed issues such as budgets and staffing. Defendants Licari and D'Arcangelo also derived substantial financial compensation from their roles. Combined, these facts indicate that these partners were intimately involved in the operation of the Texas nursing homes. While their involvement may not be sufficient to subject them to personal liability for any negligence on the part of the partnership, it is certainly enough that they should not be surprised to be subject to jurisdiction in Texas. *See Construction Aggregates v. Senior Commodity Co.,* 860 F.Supp. 1176, 1180 (E.D.Tex.1994) (*citing Plumb v. Cottle,* 492 F.Supp. 1330, 1335 (D.Del.1980)) (stating that if a limited partnership in which the defendant was passively involved had engaged in a higher volume of business in Texas, the Court could assert general jurisdiction over the defendant without offending due process). Accordingly, the Court concludes that the Texas

activities of Defendants Licari and D'Arcangelo satisfy the minimum contacts prong of the due process test.[6]

The Court next examines whether requiring these Defendants to defend this suit in Texas would satisfy "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158. Defendants Licari and D'Arcangelo offer no argument that exercise of jurisdiction over it would be unreasonable other than that they are protected by the fiduciary shield doctrine, which of course does not apply to their activities as limited partners. Indeed, there appears to be little argument. Through various corporations and partnerships, these Defendants are partial owners of 49 nursing homes in Texas. On that basis, it appears that subjecting them to suit in this state would not be unduly burdensome. Similarly, this state has a weighty interest in seeing the resolution of a lawsuit concerning the health and safety standards of such a large number of nursing homes. Finally, the interests of both Plaintiff and the interstate judicial system would be advanced by litigating this action in this forum. Bench trial is set for August 16, 1999, dismissal of Plaintiff's action against Defendants Licari and D'Arcangelo would certainly result in considerable delay with respect to them. Given these factors, the Court concludes that exercising jurisdiction over these Defendants is consistent with traditional notions of fair play and substantial justice.

The exercise of specific jurisdiction over Defendants Licari and D'Arcangelo satisfies both prongs of the due process test. Accordingly, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is hereby **DENIED** with respect to Defendants Licari and D'Arcangelo.

**5) *Jurisdiction over Wallace Cannon and Bob Sorenson***

▮ Plaintiff argues that Defendants Cannon and Sorenson are subject to the personal jurisdiction of this Court by virtue of their role as participants in the tortious conduct that allegedly resulted in the death of Ms. Newman. The Court cannot agree.

In support of her position, Plaintiff cites *Calder*, 465 U.S. at 790, 104 S.Ct. at 1487. That decision is inapposite. In *Calder*, the Supreme Court held that the intentional conduct of defendants in Florida, "calculated to cause injury to [the plaintiff] in California," subjected the defendants to personal jurisdiction in California. 465 U.S. at 791, 104 S.Ct. at 1487. The *Calder* Court apparently limited its holding to intentional conduct specifically targeted at an individual. Here, Plaintiff alleges that the untargeted negligent conduct of Defendants Cannon and Sorenson resulted in the death of Ms. Newman. The conduct complained of by Plaintiff in this case is too different from that alleged in *Calder* to conclude that it alone provides a basis for jurisdiction.

Defendants Wallace and Sorenson are entitled to the protection of the fiduciary shield doctrine. Although the Court has

---

**6.** Defendants cite *Construction Aggregates*, 860 F.Supp. at 1179, in support of their argument that the limited partners in CCS and 22 Texas Services, L.P. do not have sufficient contacts with this forum to subject them to personal jurisdiction here. In that case, the court held that it had neither specific nor general jurisdiction over the individual defendant based on his Texas contacts, which consisted of the contract forming the basis of the suit and an unrelated investment interest in a motel near Port Arthur. *See id.* at 1180–81. In holding that the defendant was not subject to general jurisdiction, the court stated that his limited partnership interest in the motel was too small and passive to supply the necessary contacts. *See id.* at 1180. That holding is inapposite. The issue in that case was general jurisdiction; here, Plaintiff seeks to establish specific jurisdiction, as the alleged actions of the limited partners were directly related to the underlying death of Ms. Newman. Moreover, the court in *Construction Aggregates* expressly stated that if the defendant's contacts as a limited partner had been more expensive and he had exercised more control over the limited partnership's business, "haling [the defendant] into court in Texas based on a general presence theory might not offend due process." *Id.* The Court thus finds no support for Defendants' argument in this decision.

**614**

disregarded the corporate form of Defendants Arizona Partners and 22 Texas Services, Inc., Plaintiff cites no authority for her implicit argument that piercing the corporate veil allows the Court to assert personal jurisdiction over non-shareholders such as these Defendants. Accordingly, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED** with respect to Defendants Wallace and Sorenson.

### III. CONCLUSION

For the reasons set forth above, Defendants' combined Motions to Dismiss for Lack of Personal Jurisdiction are each and all **DENIED** with respect to Defendants Arizona Partners, John P. Durham, Christine Bogrette, John H. Durham, Carol Durham, Peter Licari, and Michael D'Arcangelo. The Motion to Dismiss for Lack of Personal Jurisdiction of Defendants Wallace Cannon and Bob Sorenson is **GRANTED.** Each and all of Plaintiff's claims against Defendants Cannon and Sorenson are **DISMISSED WITHOUT PREJUDICE.** A final judgment in regard thereto will be entered in due course.

This case remains set for trial on August 16, 1999. The Court will address Plaintiff's substantive claims against the remaining Defendants at that time. At this juncture, however, the Court must note that the allegations in Plaintiff's Complaint are among the most horrifying it has seen in its nine years on the bench, with respect to both the alleged conditions at Caldwell and the appallingly disingenuous and deceitful machinations engaged in by the various Defendants in an attempt to insulate themselves from potential liability. The Court understands and appreciates that one legitimate goal of forming corporations or limited partnerships is to protect the principals from personal liability. Nonetheless, if the allegations included in Plaintiff's Complaint are proven true at trial, the Court will strongly consider encouraging the jury's imposition of genuinely substantial punitive damages, something it has never before done in nine years on the bench. The parties are **ORDERED** to

bear their own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**