**Carol BULLION, Plaintiff–Appellant,**

**v.**

**Larrian GILLESPIE, M.D., Defendant–Appellee.**

**No. 89–1841**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Feb. 28, 1990.

Before HIGGINBOTHAM, JONES, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

This case presents a jurisdictional question of whether a Texas resident, allegedly injured as a consequence of her participation in an experimental medical program based in California, can force that program's nonresident administrator to defend medical malpractice and deceptive-trade-practice claims in Texas. Concluding that the plaintiff has established a *prima facie* case of jurisdiction sufficient to avoid dismissal without a hearing, we reverse and remand.

I.

The plaintiff, Carol Bullion, is a Texas resident who suffers from the urological disorder known as "interstitial cystitis." The defendant, Dr. Larrian Gillespie, is a California urologist whose expertise extends to the disease afflicting Bullion and who has authored the nationally-distributed book, *You Don't Have To Live with Cystitis!*

Bullion was introduced to Gillespie's work by her local urologist, Dr. Reeves, who had read the book and was favorably impressed by the treatments offered by Gillespie for certain urological ailments. Reeves advised Bullion to purchase Gillespie's book for her own personal benefit, an invitation which Bullion accepted. Reeves then proceeded to contact Gillespie in California in order to review Bullion's particular urological problem. As a consequence of those conversations, a professional relationship developed between Bullion and the two doctors.[1] In fact, Reeves referred Bullion to Gillespie in California for an in-person consultation.

Todd N. Wade, Brown, Maroney, Oaks, Hartline, Douglas L. Hilleboe, Austin, Tex., for plaintiff-appellant.

Glen M. Wilkerson, Davis, Welch, Patricia M. McClung, Austin, Tex., for defendant-appellee.

[1]. Gillespie, for example, recommended a new treatment program for Bullion that was to be administered by Reeves in Texas. To that end, Gillespie sent the vitamin known as pyridoxal–5–phosphate to Reeves to aid in Bullion's treatment. In addition, Gillespie regularly sent a health newsletter to Reeves and Bullion concerning updates in the treatment of certain urological problems.

Bullion traveled to California in March 1987 to be examined and treated by Gillespie. There, it was confirmed that she indeed suffered from interstitial cystitis. In addition, Bullion was screened for her possible participation in an experimental treatment program being administered by the defendant with the approval of the Food and Drug Administration. Concluding that she was a suitable candidate, Gillespie invited Bullion to participate in the program; Bullion accepted Gillespie's invitation and returned to Texas.

As part of the program, it was envisioned that Bullion would receive the drug "angiostat" through the mail in Texas and that she would continue her medical visits locally with Reeves, who agreed to supervise Bullion's progress and report his findings to Gillespie in California. Accordingly, Bullion received, in Texas, three separate mail deliveries of angiostat, and some related correspondence, from Gillespie. In return, Bullion made a series of payments to Gillespie for the medical services and drugs received.

Bullion alleges that she was injured by a steroid contained in the experimental drug provided by Gillespie. She originally filed suit in Texas state court, raising claims against Gillespie involving medical malpractice and violations of the Texas Deceptive Trade Practices–Consumer Protection Act. There being complete diversity between the parties, Gillespie removed this action to federal court in Texas, then successfully moved the district court to dismiss the lawsuit for want of personal jurisdiction.

On appeal, Gillespie maintains that she lacks sufficient contacts with the state to be sued there. She alleges in her affidavit and pleadings that she is licensed to practice medicine in California and not in Texas; that she does not advertise or solicit patients in Texas; that she served as only a consultant to Reeves; that she did not profit from her relationship with Bullion; that she has rarely visited Texas, and never for the purpose of treating patients; and that her book was a scholarly endeavor and not one designed to solicit business.

Bullion claims that Gillespie directly shipped the drugs to her Texas home, that Gillespie repeatedly talked to Reeves on the telephone about her medical condition, and that Gillespie mischaracterizes their professional relationship in labeling herself a "consultant" to Reeves. Bullion alleges that her participation in Gillespie's experimental program belies Gillespie's claim of being only a consultant to Reeves. Bullion believes that she was Gillespie's patient and that Reeves's role was to implement Gillespie's prescribed course of medical treatment.

## II.

A nonresident defendant is amenable to personal jurisdiction in a federal diversity suit to the extent permitted by a state court in the state in which the federal court resides. *Cycles, Ltd. v. W.J. Digby, Inc.,* 889 F.2d 612, 616 (5th Cir.1989); *DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1264 (5th Cir.1983). That is, the "state court or federal court sitting in diversity may assert jurisdiction if: (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the fourteenth amendment to the United States Constitution." *Cycles,* 889 F.2d at 616; *accord WNS, Inc. v. Farrow,* 884 F.2d 200, 202 (5th Cir.1989).

The parties do not dispute that the substantive law of Texas applies in this federal diversity action. Accordingly, the district court's personal jurisdiction turns upon the reach of the Texas long-arm statute,[2] which has been interpreted by Texas courts as extending to the limits of due process.[3]

---

2. *See* Tex.Civ.Prac. & Rem.Code Ann. §§ 17.-041–17.045 (Vernon 1986).

3. *See WNS,* 884 F.2d at 202; *Interfirst Bank Clifton v. Fernandez,* 844 F.2d 279, 282 (5th Cir.), *modified on other grounds,* 853 F.2d 292 (1988); *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 372 (5th Cir.1987); *Kawasaki Steel Corp. v.*

*Middleton,* 699 S.W.2d 199, 200 (Tex.1985); *Hall v. Helicopteros Nacionales de Colombia, S.A.,* 638 S.W.2d 870, 872 (Tex.1982), *rev'd on other grounds,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *U–Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760, 762 (Tex.1977), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978).

That being so, a nonresident's amenability to personal jurisdiction under the Texas long-arm statute collapses into a federal-style inquiry as to whether jurisdiction comports with federal constitutional guarantees. *Fernandez,* 844 F.2d at 282; *Bearry,* 818 F.2d at 373.

The Supreme Court has interpreted due process as requiring federal courts seeking to exercise personal jurisdiction over nonresident defendants to conclude, first, that the defendant has purposefully established "minimum contacts" with the forum state and, if so, that entertainment of the suit against the nonresident would not offend "traditional notions of fair play and substantial justice." [4] That is, if "minimum contacts" are shown to exist, federal courts still must decline to exercise jurisdiction over the defendant if prosecution of the action in the forum state would be "unreasonable and unfair." [5]

Minimum contacts with a forum state may arise incident to a federal court's "general" or "specific" jurisdiction over a nonresident defendant. *See Fernandez,* 844 F.2d at 283. General jurisdiction is invoked where the nonresident defendant maintains "continuous and systematic" contacts with the forum state. *See id.; WNS,* 884 F.2d at 203 n. 1. Both parties acknowledge that the facts of this case do not present such a general jurisdictional claim against the nonresident doctor. The doctor's amenability to suit, if warranted at all, turns upon specific jurisdictional contacts and her relationship to the alleged tort in Texas.

It is well settled that specific jurisdiction may arise without the nonresident defendant's ever stepping foot upon the forum state's soil [6] or may arise incident to the commission of a single act directed at the forum.[7] The appropriate inquiry is whether the defendant purposefully availed herself of the privilege of conducting activities in-state, thereby invoking the benefits and protections of the forum state's laws. *Burger King,* 471 U.S. at 474–75, 105 S.Ct. at 2183–84 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). Jurisdiction is improper if grounded in the unilateral activity of the plaintiff. *World–Wide Volkswagon Corp. v. Woodson,* 444 U.S. 286, 298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Bearry,* 818 F.2d at 374.

### III.

A district court's determination that personal jurisdiction can be exercised over a nonresident defendant is a question of law, reviewable *de novo* where the facts are not disputed. *See, e.g., Benny v. Pipes,* 799 F.2d 489, 492 (9th Cir.1986), *modified on other grounds,* 807 F.2d 1514 (9th Cir.) (per curiam), *cert. denied,* 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987); *Pacific Atl. Trading Co. v. M/V Main Express,* 758 F.2d 1325, 1326 (9th Cir.1985). However, where, as here, the alleged facts are disputed, "the party who seeks to invoke the jurisdiction of the dis-

---

**4.** *See Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 105, 107 S.Ct. 1026, 1029, 94 L.Ed.2d 92 (1987) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), and *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985); *WNS,* 884 F.2d at 202; *Fernandez,* 844 F.2d at 282.

**5.** *See Asahi,* 480 U.S. at 121–22, 107 S.Ct. at 1037–38 (Stevens, J., concurring in part and concurring in the judgment).

The fairness prong for personal jurisdiction requires federal courts to consider (1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *Asahi,* 480 U.S. at 113, 107 S.Ct. at 1033 (quoting *World–Wide Volkswagon Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 563, 62 L.Ed.2d 490 (1980)); *Fernandez,* 844 F.2d at 284.

**6.** *See Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184 ("we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction ...").

**7.** *Bearry,* 818 F.2d at 374 ("If the contact resulted from the defendant's conduct and created a substantial connection with the forum state, even a single act can support jurisdiction.").

trict court bears the burden of establishing contacts by the nonresident defendant sufficient to invoke the jurisdiction of the court." *WNS*, 884 F.2d at 203; *accord D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir.1985).

█ "In satisfying the above burden, when the jurisdictional issue is to be decided by the court on the basis of facts contained in affidavits, a party need only present facts sufficient to constitute a prima facie case of personal jurisdiction." *WNS*, 884 F.2d at 203. Proof by a preponderance of the evidence is not required. *D.J. Investments*, 754 F.2d at 545–46. "Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *Id.* at 546.

█ We believe that the district court, contrary to the rule affirmed in *D.J. Investments* and *WNS*, failed to recognize that Bullion needed only to establish a *prima facie* case of personal jurisdiction at this pre-trial stage of the proceeding. In addition, the court dismissed many of Bullion's factual assertions offered in the pleadings and affidavits that were at odds with competing assertions made by Gillespie. Since factual conflicts contained in the affidavits must be resolved in favor of the plaintiff, reversible error thus was committed.

█ When the factual differences are found in favor of Bullion at this motion phase in the litigation, as *D.J. Investments* and *WNS* instruct, we conclude that she has presented a *prima facie* case for personal jurisdiction. While deposition testimony or evidence adduced at a hearing under Fed.R.Civ.P. 12 or at trial might mandate a different conclusion, for purposes of this appeal we must accept as true Bullion's assertion that Gillespie shipped to her, in Texas, drugs that proximately caused her injuries.

Moreover, under this standard we are to believe that Bullion was Gillespie's patient for purposes of the experimental program and that Gillespie received compensation for her services. We also must accept that Gillespie maintained regular telephone contact with Reeves and administered to the medical needs of other patients in Texas as well. Thus, aggregating these separate contacts with Texas, we conclude that personal jurisdiction over the defendant comports with the due process requirement of "minimum contacts."

Separately, as required by *Asahi*, we conclude that personal jurisdiction over the purveyor of the allegedly harmful drugs is both fair and reasonable in this case. We note that Gillespie shipped the experimental drugs directly to Bullion in Texas [8] and that the alleged tort took place in whole or in part in Texas.

Moreover, Texas has a strong interest in protecting its citizens from allegedly harmful experimental drugs, dispensed by those not licensed to practice within the state. We know of no burden upon the defendant that outweighs the interests of Texas, and of the plaintiff, in litigating this action in Texas. Further, contrary to Gillespie's assertion, society's interest in promoting medical research is not undermined where, as here, doctors are held to answer for alleged tortious conduct in those states in which they solicit and enlist volunteers for the consumption of experimental drugs.

We express no opinion concerning the merits of Bullion's medical malpractice and deceptive-trade-practice claims against Gillespie. We hold only that Bullion has maintained a *prima facie* case, supported by factual assertions in her affidavits. The judgment dismissing for want of personal jurisdiction is REVERSED and REMAND-

---

**8.** We do not intend to suggest that Gillespie injected angiostat into the "stream of commerce"; rather, her connection with the forum relates to direct mail shipments to Bullion in Texas for purposes of consumption of the experimental drugs there. To be clear, neither party suggests that Gillespie was "marketing" drugs in Texas.

ED, without prejudice to a hearing on the jurisdictional issue under Fed.R.Civ.P. 12.