IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 97-21019
_____

TRENT B. LATSHAW; LATSHAW
DRILLING AND EXPLORATION CO.,

Plaintiffs-Appellants,

versus

H.E. "SONNY" JOHNSTON; FELICIANA SAND
AND GRAVEL COMPANY INC.,

Defendants-Appellees.
_____

Appeal from the United States District Court
for the Southern District of Texas
_____
February 5, 1999

Before DAVIS, SMITH, and WIENER, Circuit Judges.

WIENER, Circuit Judge.

Plaintiffs-Appellants Trent B. Latshaw and Latshaw Drilling and Exploration Company ("Latshaw Drilling") appeal the district court's dismissal of their breach of oral partnership/breach of oral joint venture agreement claim against Defendants-Appellees Henry E. Johnston and Feliciana Sand and Gravel Company, Inc. ("Feliciana") for lack of personal jurisdiction. Concluding that the plaintiffs have established a prima facie showing of personal jurisdiction sufficient to avoid dismissal without a hearing, we reverse and remand.

FACTS AND PROCEEDINGS

This case involves claims by Latshaw and Latshaw Drilling that Johnston and Feliciana breached an alleged oral partnership/joint venture agreement for the joint purchase and sale of oil drilling equipment. Latshaw is a Texas resident and the president and owner of Latshaw Drilling, a Texas corporation. Johnston is a Louisiana resident and the president and principal stockholder of Feliciana, a Louisiana corporation.

Latshaw alleges that he first met Johnston in 1986 at an auction in Beaumont, Texas. After this first encounter, Latshaw sent a letter to Johnston outlining his (Latshaw's) background in the oil and gas industry and setting forth his view that it was a propitious time to purchase drilling rigs and equipment at depressed prices, which could later be resold at a significant profit. It was from this letter, claims Latshaw, that an ongoing, nearly decade-long business relationship arose between the two men.

Under this alleged arrangement, Latshaw searched for drilling rigs to buy. Latshaw assumed responsibility for all costs incurred in doing so, and Johnston financed the purchases. When they resold the rigs, Johnston was reimbursed for the cost of purchase plus interest before any profits were distributed to Latshaw. Latshaw and Johnston then split any remaining profit, 60% to Johnston and 40% to Latshaw. Although Latshaw wrote to Johnston in June 1993 proposing that they sign a written contract memorializing this

60%/40% arrangement (the "June 1993 Partnership Proposal"), they never did so. Nevertheless, according to Latshaw, the two men jointly purchased in the names of Latshaw (or Latshaw's company) or Johnston (or Johnston's company) six complete drilling rigs for a total price of $2.26 million. They additionally purchased other types of petroleum-related equipment valued at $500,000.

The break in the relationship, asserts Latshaw, stemmed from a deal involving two drilling rigs that were eventually sold to a purchaser from China (the "China Rigs"). In 1993, Latshaw began negotiations to sell to the Chinese purchaser two rigs that he and Johnston had previously purchased. Johnston became uncomfortable with the terms and conditions of the sale and the complexity of an international transaction. As a result, Latshaw was forced to carry on the negotiations and to bear the financial responsibility of re-rigging and refurbishing the rigs without Johnston's financial support. In February 1994, after the "arrangements became more solid," Latshaw and Johnston entered into a written agreement (the "February Agreement") that provided for Johnston to receive $2,550,000 for the sale of the China Rigs. Although the February Agreement stated that Johnston (the "Seller") was the "sole owner" of the China Rigs, Latshaw alleges that the break in the relationship began when Johnston refused to pay Latshaw the 40% of the profit to which he was entitled from the sale of the rigs. Latshaw further alleges that Johnston refused to pay him his 40% of the profit generated by the sale of other rigs and equipment.

4

In May 1997, Latshaw brought the present suit against Johnston in federal district court in Texas, asserting claims for breach of contract and breach of fiduciary duty as partner or joint venturer or both. Johnston filed a motion to dismiss for lack of personal jurisdiction. In support of his motion, Johnston submitted an affidavit averring that (1) he and Feliciana do not transact business or advertise in Texas; (2) Feliciana is not licensed to do business in Texas; (3) although he, individually, was in the business of buying and selling oil field equipment and he paid Latshaw and Latshaw Drilling a commission ($88,600) for Latshaw's services in facilitating a sale of a single oil drilling rig, he never entered into a partnership or joint venture with Latshaw; and (4) he had only minimal contacts with Texas after his chance encounter with Latshaw at the 1986 auction in Texas. More specifically, Johnston asserted in the affidavit that he or Feliciana alone (and not Latshaw or Latshaw Drilling) bought all six rigs and that they did not buy any of the rigs from Texas. He further averred that, although he did deliver the two China Rigs to Texas "in accordance with Latshaw's instructions" in the February Agreement, he made only two other trips to Texas after the 1986 auction, both of which were to attend equipment auctions.

In response, Latshaw submitted a counter-affidavit based on his business diary, stating that Johnston had made 26 trips to Texas related to their alleged business arrangement, including trips to attend oil field equipment auctions, to inspect equipment

5

for potential purchase, and to purchase equipment.  Latshaw further asserted in the affidavit that Johnston had made at least 37 calls to Latshaw in Texas related to their alleged business arrangement.

Although the district court did not hold an evidentiary hearing under Federal Rule of Civil Procedure 12, it granted Johnston's motion to dismiss.  Latshaw timely filed this appeal.

## II.

## ANALYSIS

### A.    Standard of Review

We review de novo a district court's grant of a motion to dismiss for lack of personal jurisdiction.[1]

### B.    Applicable Law

When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits.[2]  Therefore, in a no-hearing situation, a plaintiff

---

[1]Jobe v. ATR Mktg., Inc., 87 F.3d 751, 753 (5th Cir. 1996).

[2]See Ham v. La Cienega Music Co., 4 F.3d 413, 415 (5th Cir. 1993); Command-Aire v. Ontario Mechanical Sales & Service, 963 F.2d 90, 93 (5th Cir. 1992); Bullion v. Gillespie, 895 F.2d 213, 217 (5th Cir. 1990) ("[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists.") (quoting D.J. Investments, Inc. v. Metzler Motorcycle Tire Agent Gregg, Inc., 754 F.2d 542, 546 (5th Cir. 1985)).

6

satisfies his burden by presenting a _prima facie_ case for personal jurisdiction.[3]

A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution.[4] As the Texas long-arm statute[5] extends to the limits of federal due process, these two steps conflate.[6]

The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice."[7] To comport with due process, the defendant's conduct in connection with the forum state must be such that he "should reasonably anticipate being

---

[3]_Bullion_, 895 F.2d at 217.

[4]_See, e.g._, _Ham_, 4 F.3d at 415; _Irving v. Owens-Corning Fiberglas Corp._, 864 F.2d 383, 385 (5th Cir. 1989).

[5]Tex. Civ. Prac. & Rem. Code §§ 17.041-045 (Vernon 1986).

[6]_Schlobohm v. Schapiro_, 784 S.W.2d 355, 357 (Tex. 1990); _Ham_, 4 F.3d at 415 & n.7.

[7]_International Shoe Co. v. Washington_, 326 U.S. 310, 316 (1945).

haled into court" in the forum state.[8]

As Latshaw alleges that his suit arises from or relates to the defendant's contact with the forum state, we are concerned with "specific jurisdiction."[9] Although a single act by the defendant directed at the forum state can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted,[10] entering into a contract with an out-of-state party, without more, is not sufficient to establish minimum contacts.[11] Rather, in a breach of contract case, to determine whether a party purposefully availed itself of a forum, a court must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing...."[12]

C. Merits

Latshaw argues that the district court incorrectly accepted Johnston's averments as true for the purposes of determining whether personal jurisdiction could be exercised over Johnston; and that he (Latshaw) has presented more than sufficient evidence to

---

[8]World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

[9]See Burger King, 471 U.S. at 486; Bearry v. Beech Aircraft Corp., 818 F.2d 370, 374 (5th Cir. 1987).

[10]Ham, 4 F.3d at 415-16; Dalton v. R & W Marine, Inc., 897 F.2d 1359, 1361 (5th Cir. 1990).

[11]Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478-79 (1985).

[12]Id. at 479.

establish a <u>prima</u> <u>facie</u> case for jurisdiction. Specifically, Latshaw points to (1) his diary entries indicating that Johnston made 26 trips to Texas between 1986 and 1993, including trips to inspect, bid on at auction or purchase oil field equipment, to sign the sales agreement on the China Rig deal, and to deliver the China Rigs to Latshaw in Houston; (2) evidence that on "more than 24 occasions" Latshaw and Johnston bought and sold equipment located in Texas; and (3) his diary entries that Johnston made at least 37 phone calls to Latshaw regarding their business together.

Latshaw additionally adverts to an incident in connection with the sale of the China Rigs to demonstrate Johnston's ready willingness to resort to the court system in the very state that he now claims has no jurisdiction over him. The February Agreement provided that the China Rigs were to be held and refurbished at the Roberds Johnson Industries yard in Houston and that they would not be moved from the yard onto the ship chartered by the Chinese party until Johnston had received the amount he was owed from the deal. Latshaw states that when he was forced to move the rigs prematurely because the city no longer permitted sandblasting and painting to take place within the city limits, and Johnston learned the rigs had been moved, Johnston hired a Houston law firm, which threatened Latshaw that it was going to file an injunction in Houston to prevent the loading of the rigs onto the ship chartered by the Chinese party. Latshaw asserts that, even though no such injunction was ever filed, the incident and the above-listed

9

contacts clearly demonstrate that Johnston purposefully availed himself of the benefits and protections of Texas law and could reasonably anticipate being haled into Texas court as a result of these contacts.

Johnston's response is two-fold. First, he asserts that the vast majority of the contacts on which Latshaw relies are not relevant to the personal jurisdiction inquiry because, as Latshaw's offer, and Johnston's rejection of, the June 1993 Partnership Proposal establish, there was no partnership or joint venture agreement between the two businessmen prior to June 1993. Second, Johnston asserts that the only contacts that Latshaw alleges to have occurred after Johnston rejected the June 1993 Partnership Proposal —— (1) a February 1994 trip to Texas to sign the China Rigs sales agreement; (2) a separate February 1994 trip to deliver a mud pump also connected to the China Rigs; and (3) a March 1994 trip to "look over" the China Rigs[13] —— were initiated by Latshaw and thus cannot serve as the basis for subjecting Johnston to the jurisdiction of courts located in Texas.[14]

Johnston cites <u>Hydrokinetics, Inc. v. Alaska Mechanical,</u>

---

[13]As we reject Johnston's proposed dissection of the relevant contacts, we need not and therefore do not address whether these three contacts alone are sufficient to constitute a <u>prima</u> <u>facie</u> case of personal jurisdiction.

[14]<u>Hanson v. Denkla</u>, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.").

Inc.,[15] in support of his argument that Latshaw's allegations, when so parsed (i.e., assuming no joint venture agreement prior to June 1993), are insufficient to establish jurisdiction over Johnston. In Hydrokinetics, a Texas resident brought a breach of contract suit against an Alaskan defendant.[16] We held that, although the defendant negotiated a contract by phone and telefax with a Texas company, traveled to Texas to "close" the deal, and agreed to purchase goods manufactured in Texas, there was no personal jurisdiction over the Alaskan defendant because (1) the defendant's only contacts with the state were related to a single transaction; (2) the plaintiff had initiated this single transaction contacting the defendant in Alaska; (3) the agreement's choice-of-law provision specified Alaskan law; and (4) the plaintiff delivered the goods it produced under the contract to the defendant in Seattle, Washington.[17] Johnston asserts that, as in Hydrokinetics, Latshaw initiated the alleged agreement by sending a letter to Johnston in Louisiana; the February 1994 Agreement was governed by Louisiana law; and Johnston never purchased any rigs in Texas.

Johnston's reliance Hydrokinetics is misplaced. His argument founders on the simple fact that, at the this stage of a no-evidentiary-hearing situation, we are constrained to accept

---

[15]700 F.2d 1026 (5th Cir. 1983).

[16]Id. at 1028.

[17]Id. at 1028-29.

11

Latshaw's allegation that the two men had entered into an oral partnership/joint venture agreement prior to June 1993 and that all of the alleged trips, phone calls, sales, and purchases in furtherance of that agreement took place.[18]  With this assumption, it is clear that Latshaw's allegations are both distinguishable from those in <u>Hydrokinetics</u> and sufficient to establish a <u>prima facie</u> case of specific personal jurisdiction over Johnston.

In <u>Hydrokinetics</u>, the defendant had no more than a fortuitous connection to Texas related to a single transaction, initiated by the Texas plaintiff, and carried out in large part outside the Texas state boundaries.  Johnston, by contrast, was much more than a one-shot purchaser of Texas goods whose only connection with the state grew out of a Texas manufacturer's marketing efforts. Rather, according to Latshaw's complaint and affidavit, Johnston entered into an ongoing business relationship with a Texas resident (and his company) and made multiple trips and phone calls to Texas

---

[18]<u>Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.</u>, 9 F.3d 415, 418 (5th Cir. 1993) ("When alleged jurisdictional facts are disputed, we must resolve all conflicts in favor of the party seeking to invoke the court's jurisdiction."); <u>Bullion</u>, 895 F.2d at 217 ("While deposition testimony or evidence adduced at a hearing or at trial might mandate a different conclusion, for purposes of this appeal we must accept as true [plaintiff's factual assertions supporting jurisdiction]."); <u>Associated Bus. Tele. Sys. Corp. v. Danihels</u>, 829 F. Supp. 707, 711 n.1 (D.N.J. 1993) ("Although the existence of this contract is disputed, where a jurisdictional issue cannot be decided without ruling on the merits, the case must proceed to trial.") (citing <u>Wade v. Rogala</u>, 270 F.2d 280, 285 (3d Cir. 1959)).

in furtherance of that relationship.[19]  When, as we must at this point, we accept Latshaw's allegations as true, we find that Johnston has purposefully availed himself of the benefits and protections of doing business in Texas and could reasonably anticipate being haled into court there.  As such, Latshaw has stated a prima facie case for personal jurisdiction.[20]

## III.

## CONCLUSION

For the foregoing reasons, we REVERSE and REMAND for proceedings consistent with this opinion.

---

[19]See Polythane Sys., Inc. v. Marina Ventures Int'l, Ltd., 993 F.2d 1201, 1206 (5th Cir. 1993) ("The parties had an ongoing business relationship, and the [nonresident defendant's] contacts with the forum state were not fortuitous."); cf. Trinity Indus., Inc. v. Myers & Assocs., Ltd., 41 F.3d 229, 231 (5th Cir. 1995) (holding attorneys subject to personal jurisdiction when they had "deliberately availed themselves of benefits of ongoing relationship" with Texas client); Bullion, 895 F.2d at 217 (specific jurisdiction over nonresident doctor when forum state patient had ongoing relationship with doctor and treatment occurred partly in forum state).

[20]Such a determination does not, of course, preclude the district court from conducting hearing on remand regarding the jurisdictional issue.  Bullion, 895 F.2d at 217.