IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-20244
Summary Calendar
_____


AQUA-DYNE INC, a Texas Corporation

                                        Plaintiff-Appellant

v.

LES ENTERPRISES CLAUDE CHAGNON INC, a Canadian
Corporation

                                        Defendant-Appellee


_____

Appeal from the United States District Court
for the Southern District of Texas
Docket No. H-99-CV-2627
_____

November 3, 2000

Before KING, Chief Judge, and SMITH and PARKER, Circuit Judges.

PER CURIAM:[*]

    Plaintiff-Appellant, Texas-based Aqua-Dyne Inc., appeals the

district court's final judgment dismissing Aqua-Dyne's

declaratory judgment action.  The district court found it lacked

personal jurisdiction over Defendant-Appellee, Canadian-based Les

Enterprises Claude Chagnon, Inc.  For the following reasons, we

_____

    [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

affirm.

I.

Aqua-Dyne, Inc. is a Texas corporation that manufactures high-pressure water jetting systems, pumps, and related equipment. Les Enterprises Claude Chagnon, Inc. ("Chagnon") is a Canadian corporation that purchased a "dual water jet blaster unit pump" and related equipment from Liquid-Laser Jetting Systems, Inc. ("Liquid-Laser"). At the time of the purchase Liquid-Laser was the Canadian distributor for Aqua-Dyne products. Liquid-Laser and Chagnon signed the contract for $558,000 Canadian on April 22, 1999.

The equipment at issue was shipped F.O.B. from Houston, Texas to Liquid-Laser in Canada and then sent to Chagnon, also in Canada. Payment was remitted from Chagnon through Liquid-Laser to Aqua-Dyne in Houston. Chagnon's only direct contact was with Liquid-Laser, as distributor for Aqua-Dyne. Aqua-Dyne did, however, create the quotation and contract for sale in Texas and also transferred title to the equipment to Chagnon in Texas.

A disagreement arose regarding the age and condition of the equipment. Chagnon expressed dissatisfaction with its purchase and sought a refund from Liquid-Laser. On June 10, 1999, Chagnon and Liquid-Laser reached a settlement agreement whereby Liquid-Laser agreed to repurchase the disputed equipment. The agreed-upon amount ($450,000 Canadian) was to be paid by June 15, 1999.

2

No payment issued despite the further written requests by Chagnon. On August 2, 1999, with the settlement agreement still unconsumated, Chagnon wrote Aqua-Dyne demanding reimbursement for damages from the faulty equipment and stating that it would pursue legal remedies against the Texas company in Canada. As a result of this threat, on August 18, 1999, Aqua-Dyne filed a declaratory judgment suit in the United States District Court for the Southern District of Texas. Aqua-Dyne sought a declaration that it was not liable for the cost of the disputed equipment and that the Canadian settlement agreement was valid. On September 15, Chagnon filed suit against Aqua-Dyne and Liquid-Laser in the Superior Court of the Province of Quebec, District of Saint-Hyacinthe.

On October 4, 1999, Chagnon filed a motion to dismiss the Texas action for lack of personal jurisdiction and under the doctrine of forum non conveniens, or in the alternative, to dismiss or stay pending the outcome of the Canadian suit. See Fed. R. Civ. P. 12(b)(2). Aqua-Dyne filed an opposition motion on October 22, 1999. On November 5, 1999, Chagnon filed a reply brief with affidavits from Pierre Lebel and Richard Cignac attached. The district court denied Chagnon's motions on November 8, 1999.

On November 10, 1999, Chagnon filed a Motion for

3

Reconsideration and refiled its reply brief and affidavits.[1]  In the days that followed, numerous responses and replies were filed by the parties.

After this series of motions, responses and replies, but without an evidentiary hearing, the district court granted Chagnon's motion for reconsideration and dismissed the suit for lack of personal jurisdiction.  The remaining claims of forum non conveniens and the motion to stay pending the Canadian action were rendered moot.  The district court's memorandum and order and the final judgment dismissing the lawsuit were entered on February 23, 2000.

Aqua-Dyne timely appeals.


                              II.

We review de novo a district court's grant of a motion to dismiss for lack of personal jurisdiction.  See Jobe v. ATR Marketing., Inc., 87 F.3d 751, 753 (5th Cir. 1996).

A federal court sitting in diversity may exercise jurisdiction over a non-resident corporate defendant only if permitted by the law of the forum state.  See Fed. R. Civ. P. 4(e)(1), 4(h)(1), 4(k)(1); Alpine View Co. v. Atlas Copco AB, 205 F.3d 208, 214 (5th Cir. 2000).  The Texas long-arm statute, see

---

[1] The district court struck this motion on November 18, stating that the document was not an original.  The next day Chagnon refiled the reply.

4

Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (1997), confers personal jurisdiction over a non-resident defendant to the full extent allowed by the federal Constitution. See Wilson v. Belin, 20 F.3d 644, 647 n.1 (5th Cir. 1994). As such, analysis of the long-arm statute's grant of personal jurisdiction and the constitutional requirement that the exercise of personal jurisdiction comport with federal due process merges into a unitary question of minimum contacts with the forum state. See Mink v. AAAA Dev. LLC, 190 F.3d 333, 335 (5th Cir. 1999); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985).

This due process protection of ensuring minimal contact with the forum derives from the Fourteenth Amendment, which "permits the exercise of personal jurisdiction over a non-resident defendant when (1) that defendant has purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" Latshaw v. Johnson, 167 F.3d 208, 211 (5th Cir. 1999) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). The core of this minimum contacts protection is that the defendant's contact with the forum state must be significant enough "that he should reasonably anticipate being haled into court" in that state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

5

As the instant suit arises from Chagnon's contact with the state of Texas regarding the one-time purchase of industrial equipment, we are concerned with specific personal jurisdiction. See Wilson v. Belin, 20 F.3d 644, 647 (5th Cir. 1995) ("The 'minimum contacts' prong of the inquiry may be further subdivided into contacts that give rise to 'specific' personal jurisdiction and those that give rise to 'general' personal jurisdiction.").[2] Specific jurisdiction can be found when a non-resident defendant purposely directs its activities at a forum state and "litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)).

On appeal, Aqua-Dyne maintains that the trial judge erred in its determination that Aqua-Dyne failed to establish a prima facie showing of specific personal jurisdiction. We find no fault in the standard applied or reasoning of the district court, and through a careful reading of the affidavits and record, find no minimum contacts sufficient to "hale" Chagnon into court in

_____

[2] On appeal, discussion is limited to the question of specific personal jurisdiction. The record does not reveal that Chagnon had regular contacts with Texas or sought the regular services of Texas residents, thus precluding general personal jurisdiction. See C & H Transportation Co. Inc. v. Jensen and Reynolds Contraction Co., 719 F.2d 1267, 1270 (5th Cir. 1983). Aqua-Dyne does not challenge the district court's holding that Changon has insufficient minimum contacts for general personal jurisdiction.

6

Houston, Texas.

Under the law of this circuit, "when a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits." Latshaw v. Johnson, 167 F.3d 208, 211 (5th Cir. 1999); see also Bullion v. Gillespie, 895 F.2d 213, 217 (5th Cir. 1990) ("On a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists.") (quoting D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc., 754 F.2d 542, 546 (5th Cir. 1985)).

Mindful of the low threshold required for a district court finding that the plaintiff has made out a prima facie case for personal jurisdiction over the defendant, and resolving all factual conflicts in favor of Aqua-Dyne, we conclude that the district court correctly held that Aqua-Dyne failed to establish even a prima facie case. Three factors laid out in Aqua-Dyne's own appellate brief are dispositive of the matter. First, the terms and structure of the sales contract between Liquid-Laser and Chagnon demonstrate Chagnon's circumscribed role in Texas.

7

Second, the role of Pierre Lebel, even if characterized as a "representative" of Chagnon, fails to link the Chagnon corporation to the situs of Texas sufficiently to meet the constitutional requirement of due process.  Third, the series of communications alleged between Chagnon and Aqua-Dyne exist as after-the-fact communications, inadequate to support a showing of minimum contacts jurisdiction under the law of this and other circuits.  We address each of these arguments in turn.

A.

Aqua-Dyne argues that notwithstanding the fact that the contract was signed by two Canadian companies, and that the payment and equipment traveled directly from a Canadian distributor to a Canadian purchaser, the site of where the contract was drafted controls jurisdiction.  We disagree.

"[T]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." Hanson v. Denckla, 357 U.S. 235, 253 (1958); see also Bullion v. Gillespie, 895 F.2d 213, 216 (5th Cir. 1990) ("Jurisdiction is improper if grounded in the unilateral activity of the plaintiff.").  The drafting of the contract was such a unilateral act, neither affecting the contractual obligations of the parties nor linking the forum state to the situs where the contract was to be performed.  The same can be said of the fact that title passed to Chagnon directly in Texas and that the sales quotation was created in

8

Texas. None of these actions rises to a prima facie level of jurisdictional connection consistent with due process because none of the acts links the Canadian dispute between two contractually bound Canadian companies to the forum of Texas.

More fundamental to the due process analysis, a contract signed between two Canadian companies in Canada demonstrates a purposeful intent to have Canadian law and courts resolve resulting legal questions. Following the dictates of Burger King Corp. v. Rudzewicz, the question before this court is whether Chagnon purposely availed itself of the privileges of conducting business in Texas, and whether it was foreseeable from its conduct that it could be "haled into court" in Texas. See 471 U.S. at 474-75 (1985). Chagnon chose a Canadian distributor for its purchase. It signed a contract with that distributor. Allowing a manufacturer who has drafted the contract to assert jurisdiction over the purchaser because of that act expansively broadens the jurisdictional reach of parties not involved in the contractual relationship. In the same fashion, the production of the quotation and the transfer of title do not shift the jurisdictional analysis.

This reasoning comports with our precedent and the reasoning of sister circuits. In contract matters, we analyze "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Latshaw v. Johnson, 167 F.3d 208, 211 (5th Cir. 1999)

9

(quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479 (1985)). With the exception of the ambiguous role of Mr. Lebel (discussed below), there were no prior negotiations of Chagnon in Texas. Further, the terms of this contract relegate Aqua-Dyne to the role of manufacturer, rather than a party to the contract, and the actual course of conduct supports this limited role.

Even if Aqua-Dyne were named in the contract, this court has held that "entering into a contract with an out-of-state party, without more, is not sufficient to establish minimum contacts." Id.; see also Hydrokinetics, Inc. v. Alaska Mechanical, Inc., 700 F.2d 1026, 1031 (5th Cir. 1983) (holding that single purchase of goods known to be manufactured in Texas and payment of goods were not enough establish personal jurisdiction); Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc., 786 F.2d 1055, 1063 (11th Cir. 1986) ("[A] purchaser in an isolated transaction may not be subject to personal jurisdiction in a seller's state merely because the manufacturer performed its duties under contract there."); Scullin Steel Co. v. National Railway Utilization Corp., 676 F.2d 309, 313 (8th Cir. 1982) (finding that a contract between a non-resident purchaser and resident seller could not alone create minimum contacts in resident's state). Since Aqua-Dyne was not a direct party to the contract, and Chagnon did nothing more than contract with another Canadian company, Aqua-Dyne's contractual arguments for minimum contacts are insufficient.

10

Aqua-Dyne rests much of its minimum contact assertions on the role played by Pierre Lebel, who allegedly acted on behalf of Chagnon in Texas. Aqua-Dyne asserts first that Mr. Lebel was an employee of Chagnon, and second that in 1995 Mr. Lebel visited Aqua-Dyne in Texas as a representative for Chagnon. Taking Aqua-Dyne's characterization of Mr. Lebel as true for the purposes of a prima facie case, this court finds the following meager factual predicate insufficient for jurisdiction.

Aqua-Dyne's argument that Mr. Lebel once held the status of Chagnon employee cannot support a minimum contacts argument because Mr. Lebel only worked for Chagnon in May/June 1999, and only worked in Canada. The April 1999 contract, at issue in this case, involved negotiations before Mr. Lebel became a Chagnon employee. From the record, Mr. Lebel did not have any contact with Texas in 1999 as an employee or agent of Chagnon. Thus, Aqua-Dyne's repeated characterization of Mr. Lebel as a "Chagnon employee," while technically accurate, is not relevant to the minimum contacts question before this court. As an "employee," Mr. Lebel did nothing that that would create minimum contacts with Texas for Chagnon.[3]

---

[3] To bolster Mr. Lebel's connection with Chagnon, Aqua-Dyne states that in 1999, George Rankin, President of Aqua-Dyne observed Mr. Lebel at a meeting in Canada attempting to settle the contractual dispute between Chagnon, his employer, and Liquid-Laser, another Canadian company. Again, these facts fail to demonstrate that Mr. Lebel's employment status for a month in

Aqua-Dyne's second argument that Mr. Lebel visited Texas in 1995 as a representative of Chagnon presents a closer question. It is Mr. Lebel's relationship with Chagnon during this 1995 visit that underpins Aqua-Dyne's case. However, in its affidavits, Aqua-Dyne carefully omits any reference to Mr. Lebel's employment or agency relationship with Chagnon at the time of his visit to Texas in 1995. In its reply brief, Aqua-Dyne argues that, under the applicable legal standard, we must assume that Lebel was a representative of Chagnon, an assumption that is essentially a legal conclusion. But we are not compelled to make any assumption that is not supported by the facts that are set out in Aqua-Dyne's affidavits. Unable to assert with specificity Mr. Lebel's status as an employee or agent of Chagnon at the time of that visit, Aqua-Dyne has no factual predicate for the legal conclusion that it urges upon us.

Even if we were to accept Aqua-Dyne's argument and "assume" that Mr. Lebel was a representative of Chagnon in 1995, this fails to prove Chagnon's connection to Texas in 1999 regarding its contractual dispute with Liquid-Laser. Four years have passed, lending credence to the district court's conclusion that such a connection is too attenuated. Further, a contract not directly involving Aqua-Dyne has been entered into between two Canadian corporations. See Thompson v. Chrysler Motors Corp.,

_____

1999 has any relevance to the argument that Chagnon purposely availed itself of the forum state of Texas.

755 F.2d 1162, 1169 (5th Cir. 1985) ("A nonresident may permissibly structure his primary conduct so as to avoid being haled into court in a particular state.") (citing World-Wide Volkswagen v. Woodsen, 444 U.S. 286, 297 (1980)). Without any current purposeful availment of the Texas forum, this single visit cannot alone support the full weight of minimum contacts consistent with due process.[4]

C.

Finally, Aqua-Dyne asserts that the numerous communications made between Chagnon and Aqua-Dyne establish a prima facie case of minimum contacts. This court has held that "an exchange of communications between a resident and a nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity." Stuart v. Spademan, 772 F.2d 1185, 1193 (5th Cir. 1985); see also Williams v. Wilson, 939 F. Supp. 543, 548 (W.D. Tex. 1995) ("The Fifth Circuit has consistently held that the exchange of communications between a party in the forum state and a party in another state in the development of a contract is insufficient to confer jurisdiction over a non-

---

[4] While the number of visits is not dispositive it is relevant to assessing the weak ties of Lebel/Chagnon to the forum state. See Stuart v. Spademan, 772 F.2d 1185, 1192 (5th Cir. 1985) ("While the number of contacts with the forum state is not determinative, it is indeed one of the relevant factors to be considered within the totality of circumstances in assessing the propriety of exercising personal jurisdiction over a nonresident.") (citing Standard Fitting Co. v. Sapag, S.A., 625 F.2d 630, 643 (5th Cir. 1980)).

13

resident in a breach of contract suit.") (citations omitted)).

In the instant case, not only is Aqua-Dyne not a party to the contract, but the communications took place after the dispute arose between Chagnon and Liquid-Laser and primarily focused on settlement. Since Aqua-Dyne's claim for forum contact with Texas involves the purchase of equipment and not the later settlement negotiations, these communications involving the contract dispute are irrelevant to establish minimum contacts. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (requiring that litigation and injury result from purposeful activities in forum state to establish minimum contacts); see also Digi-Tel Holdings, Inc. v. Proteq Telecom. (PTE), Ltd., 89 F.3d 519, 524 (8th Cir. 1996) ("[C]ourts have hesitated to use unsuccessful settlement discussions as contacts for jurisdictional purposes.").

Except for the role of Mr. Lebel, no purposeful contacts between Chagnon and Aqua-Dyne are alleged before the equipment was purchased from Liquid-Laser. Such indirect international communications, occurring after the fact, cannot now be used to justify a constitutionally significant level of minimum contacts. On a prima facie level and assessing the full totality of circumstances, we are left with communications that do nothing to further the argument for minimum contacts.

As Aqua-Dyne failed to establish a prima facie threshold of minimum contacts with Texas, we need not address whether the exercise of personal jurisdiction in this case would offend

14

traditional notions of fair play and substantial justice.  <u>See</u> <u>Ashahi Metal Inc. v. Superior Court</u>, 480 U.S. 102, 113-16 (1987); <u>Felch v. Transportes Lar-Mex SA DE CV</u>, 92 F.3d 320, 329 n.20 (5th Cir. 1996).  Further, our conclusion that personal jurisdiction is lacking makes it unnecessary for us to consider Appellees' other assignments of error on forum non conveniens and the requested stay pending resolution of the Canadian lawsuit.

III.

For the above stated reasons, we AFFIRM.