IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-50408

Summary Calendar
_____


SOUTHERN COPPER, INC

                                    Plaintiff - Appellant

        v.

SPECIALLOY, INC

                                    Defendant - Appellee


_____

Appeal from the United States District Court
for the Western District of Texas
No. W-00-CV-49
_____

December 22, 2000

Before KING, Chief Judge, and WIENER and DENNIS, Circuit Judges.

PER CURIAM:[*]

    Plaintiff-Appellant Southern Copper, Inc. appeals from the district court's judgment granting Defendant-Appellee Specialloy, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction. For the following reasons, we AFFIRM.

---

    [*]  Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

# I. FACTUAL AND PROCEDURAL HISTORY

Southern Copper, Inc. ("Southern Copper") is a Texas-based corporation that manufactures copper tubing. On August 10, 1998, representatives of Southern Copper contacted the President of Specialloy, Inc. ("Specialloy"), an Illinois-based company, seeking to purchase copper-nickel billets for the manufacture of its tubing. On August 17, two of Southern Copper's representatives — the Chief Executive Officer and the Sales Manager — traveled to Specialloy's plant in Chicago, Illinois to observe the plant and to discuss the products.

Three orders of copper-nickel billets arose from these contacts. First, in August 1998, Southern Copper ordered a sample shipment of the billets from Specialloy. Finding this sample shipment to be satisfactory, Southern Copper placed two additional orders of billets on October 8 and December 8, 1998. In placing these orders, Southern Copper initiated contact, telephoning or faxing its order to Specialloy. The only other contact between the parties was the exchange of telephone calls prior to the October and December orders.

Once Southern Copper placed its orders, Specialloy would cast the billets in its Chicago plant. Then, Specialloy would make the billets available to Southern Copper, F.O.B. Specialloy's Chicago Plant. Southern Copper paid for the shipping and directed the independent freight carrier to

transport the billets from Chicago, Illinois to its headquarters in Texas.

On January 14, 2000, Southern Copper sued Specialloy in Texas state court, claiming that the billets contained in the second and third shipments were defective. Specialloy removed the suit on February 28, 2000, based upon diversity and filed a Motion to Dismiss for Lack of Personal Jurisdiction on March 6. On March 29, 2000, the district court granted Specialloy's motion.

Southern Copper timely appealed.

## II. SOUTHERN COPPER DID NOT ESTABLISH A PRIMA FACIE CASE OF PERSONAL JURISDICTION OVER SPECIALLOY

On appeal, Southern Copper contends that the district court erred in dismissing the suit against Specialloy for lack of personal jurisdiction,[1] claiming that Specialloy invoked the

---

[1] Southern Copper also argues that the district court abused its discretion in denying Southern Copper's motion for an extension of time to discover "potential jurisdictional facts." We disagree. Southern Copper's motion for an extension merely requested additional time to "take the deposition of Defendant's representative to determine additional facts to support those set forth in this Response." Most notably, the motion requested the extension only if the district court "fe[lt] that additional facts would be helpful in determining jurisdiction," and only if the court "fe[lt] it [was] necessary."

The district court was well within its discretion in deciding that "sufficient facts ha[d] been presented for the Court to rule on Defendant's motion." See Alpine View Co. v. Atlas Copco AB, 205 F.3d 208, 220-21 (5th Cir. 2000) ("We have previously noted that a district court has 'broad discretion in all discovery matters,' Wyatt v. Kaplan, 686 F.2d 276, 283 (5th Cir. 1982), and that 'such discretion will not be disturbed

jurisdiction of Texas courts by placing its goods into the stream of commerce, and hence into Texas.  Specialloy responds that because it did not act to avail itself of the benefits and protections of Texas, a Texas court "simply cannot exercise personal jurisdiction over Specialloy within the bounds of Due Process."

We review de novo a dismissal for lack of personal jurisdiction.  See Alpine View Co. v. Atlas Copco AB, 205 F.3d 208, 214 (5th Cir. 2000); Jobe v. ATR Mktg., Inc., 87 F.3d 751, 753 (5th Cir. 1996).  "When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts[.]"  Latshaw v. Johnston, 167 F.3d 208, 211 (5th Cir. 1999); see also Bullion v. Gillespie, 895 F.2d 213, 217 (5th Cir. 1990).  Therefore, the plaintiff need only present a prima facie case of personal jurisdiction to satisfy its burden.  See Alpine View Co., 205 F.3d at 215.

Under the Federal Rules of Civil Procedure, a federal court sitting in diversity may exercise jurisdiction over a nonresident

ordinarily unless there are unusual circumstances showing a clear abuse.'").  Southern Copper requested time to adduce additional facts to support those it had already presented to the district court, without indicating the possible relevance of these additional facts.  The district court, as invited by Southern Copper's motion, denied Southern Copper's request for additional time for discovery of those additional facts.  We decline to find an abuse of discretion on the part of the district court.

4

corporate defendant only if permitted by state law.  See FED. R.
CIV. P. 4(e)(1), 4(h)(1), 4(k)(1); see also Alpine View Co., 205
F.3d at 214.  We conduct a two-prong analysis to determine
whether personal jurisdiction is proper over a nonresident.
See Latshaw, 167 F.3d at 211; Jobe, 87 F.3d at 753.  First, we
determine whether the long-arm statute of the forum state confers
personal jurisdiction over the defendant.  See Latshaw, 167 F.3d
at 211.  Second, we ask whether the "exercise of such
jurisdiction by the forum state is consistent with due process
under the United States Constitution."  Id.  However, because the
Texas long-arm statute, see TEX. CIV. PRAC. & REM. CODE ANN. § 17.042
(Vernon 1997), confers personal jurisdiction over a nonresident
defendant to the full extent allowed by the federal Constitution,
our two-prong framework collapses into a single inquiry of
whether the exercise of personal jurisdiction over the
nonresident defendant is consistent with the Due Process Clause
of the Fourteenth Amendment.  See Alpine View Co., 205 F.3d at
214.

Due process permits the exercise of personal jurisdiction
when two conditions are satisfied.  First, the nonresident
defendant must have "purposefully availed [itself] of the
benefits and protections of the forum state by establishing
'minimum contacts' with the forum state."  Id. (internal
quotations omitted) (quoting Mink v. AAAA Dev. LLC, 190 F.3d 333,
336 (5th Cir. 1999)); see also Int'l Shoe Co. v. Washington, 326

5

U.S. 310, 316 (1945); Latshaw, 167 F.3d at 211.  Second, "the exercise of jurisdiction over that defendant [must] not offend 'traditional notions of fair play and substantial justice.'" Alpine View Co., 205 F.3d at 215 (quoting Mink, 190 F.3d at 336); see also Int'l Shoe Co., 326 U.S. at 316.

The "minimum contacts" inquiry may be satisfied by contacts sufficient for general jurisdiction or specific jurisdiction. See Alpine View Co., 205 F.3d at 215.  Because Southern Copper is not alleging general jurisdiction over Specialloy, however, our examination concentrates on specific jurisdiction.

The district court concluded that Specialloy's contacts with Texas did not justify the exercise of specific personal jurisdiction.  Mindful of Southern Copper's low evidentiary burden, and after taking as true its uncontroverted allegations and resolving any factual conflicts in favor of Southern Copper, we agree with the district court that Southern Copper failed to adduce evidence sufficient for a prima facie case of personal jurisdiction over Specialloy.

Regarding the first due process condition of minimum contacts, when a suit relates to the defendant's contact with the forum, specific jurisdiction is proper if that contact "resulted from the defendant's purposeful conduct and not the unilateral activity of the plaintiff."  Bearry v. Beech Aircraft Corp., 818 F.2d 370, 374 (5th Cir. 1987); see also Hanson v. Denckla, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim

6

some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."). This restriction on the minimum contacts inquiry ensures that the defendant "purposefully availed" itself of the benefits of the forum state such that it could "reasonably anticipate being haled into court there." Alpine View Co., 205 F.3d at 215 (internal quotations omitted) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)); see also Bearry, 818 F.2d at 375.

We find that any connection that Specialloy has with the State of Texas stems from the unilateral activity of Southern Copper. Specialloy does not maintain an office, agent, or place of business in Texas. Moreover, as the district court recognized, Specialloy did not reach out to Southern Copper in Texas in order to sell its billets; instead, Southern Copper initiated contact with Specialloy and traveled to Specialloy's plant in Illinois to inspect its products. All orders were placed by Southern Copper by telephone or facsimile, and Southern Copper hired an independent carrier to pick up the billets in Illinois, directing shipment to Texas.

The primary facts that Southern Copper offers to support the exercise of personal jurisdiction over Specialloy are (1) the telephone calls between the parties and (2) Specialloy's Internet website, which is available to residents of Texas. We recognize that the telephone calls were initiated by both parties at the time of the October and December orders and that these calls were

7

"necessary to discuss the quality of the sample shipment and to verify the details of the two larger purchase orders."  However, we have held that "an exchange of communications between a resident and a nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity invoking the benefits and protection of the forum state's laws." Stuart v. Spademan, 772 F.2d 1185, 1193 (5th Cir. 1985).  Because it was Southern Copper that initiated the contact and the subsequent orders, these telephone calls are not sufficient additional evidence to support an exercise of jurisdiction over Specialloy.

Nor does Specialloy's Internet website strengthen Southern Copper's case for personal jurisdiction.  "Courts addressing the issue of whether personal jurisdiction can be constitutionally exercised over a defendant look to the 'nature and quality of commercial activity that an entity conducts over the Internet.'" Mink v. AAAA Dev. LLC, 190 F.3d 333, 336 (5th Cir. 1999) (quoting Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).  In Mink v. AAAA Development LLC, this court recognized that a company may actively do business over its Internet website by entering into contracts with residents of other states.  See 190 F.3d at 336.  In such cases, personal jurisdiction over that nonresident company may be appropriate. See id.  On the other hand, we also noted that "[a]t the other end of the spectrum, there are situations where a defendant

8

merely establishes a passive website that does nothing more than advertise on the Internet." Id. In those cases, personal jurisdiction is not proper. See id.

This is a case of the latter type of website. There is no evidence in the record which demonstrates that Specialloy entered into contracts with customers over its website, and in contrast to the website in Mink, Specialloy's website did not provide an order form for purchases. See id. The website described the company and its products in general terms and was used merely for advertisement, providing details by which a reader could contact the company for more information. As this court has recognized, "advertising in national publications is not in itself sufficient to subject a defendant to personal jurisdiction." See Singletary v. B.R.X., Inc., 828 F.2d 1135, 1136 (5th Cir. 1987). Moreover, as the district court noted, Southern Copper did not demonstrate that the suit "arose out of or was related to" Specialloy's website. See id. Accordingly, we find the website was not sufficient additional contact to support personal jurisdiction over Specialloy.

In the face of this lack of activity within Texas on the part of Specialloy, Southern Copper asserts that its conduct was not unilateral because it was Specialloy that placed its products into the stream of commerce with knowledge that the billets were destined for Texas. As this court has recognized:

9

> [W]hen a nonresident's contact with the forum state "stems from a product, sold or manufactured by the foreign defendant, which has caused harm in the forum state, the court has [specific] jurisdiction if it finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the foreign state."

Alpine View Co., 205 F.3d at 216 (alteration in original) (quoting Bearry, 818 F.2d at 374). However, as we noted above, Specialloy shipped the billets F.O.B. Specialloy's Chicago Plant, with Southern Copper taking possession at that location. While we recognize this fact, in itself, cannot preclude a finding of personal jurisdiction over Specialloy, it certainly is a relevant factor for us to consider. See Singletary, 828 F.2d at 1136 (recognizing in a general jurisdiction analysis that minimum contacts was "weakened even further by the fact that the sale was initiated by the buyer and was shipped F.O.B. California, the seller's place of business"); Charia v. Cigarette Racing Team, Inc., 583 F.2d 184, 188-89 (5th Cir. 1978).

"The suggested significance of the FOB shipment is that, under a 'stream of commerce' rationale, [Specialloy] was indirectly shipping its product into [Texas] and could reasonably have foreseen that the sale would have effects in [Texas]." Charia, 583 F.2d at 188. However, we find that Specialloy did not purposefully avail itself of the benefits of the state by placing the billets into the stream of commerce because Southern Copper took possession of the billets in Illinois. Moreover,

10

Specialloy has no presence in Texas, and no Specialloy employee has ever set foot in Texas.  Therefore, Southern Copper's already fragile case is weakened further by the F.O.B. designation.[2]

In summary, after our review of the record, taking as true Southern Copper's uncontroverted allegations and resolving any factual conflicts in favor of Southern Copper, we conclude that Southern Copper failed to adduce evidence to meet its prima facie burden to support the exercise of personal jurisdiction over Specialloy.  Because we find that the first due process condition of minimum contacts was not satisfied, we need not address whether the exercise of personal jurisdiction in this case would offend traditional notions of fair play and substantial justice.

---

[2]    We recognize that in Ruston Gas Turbines, Inc. v. Donaldson Co., 9 F.3d 415 (5th Cir. 1993), this court came to a different conclusion regarding the F.O.B. designation.  In that case, this court held that the seller "intentionally placed its products into the stream of commerce by delivering them to a shipper destined for delivery in Texas."  Id. at 420.  However, that case is distinguishable on its facts because the seller had "211 contacts" with the state of Texas through its business dealings with the plaintiff and also had its own employees situated in Texas to serve the plaintiff's customers.  See id. Those additional facts are not present in this case.  Here, there are three shipments initiated by Southern Copper, and Specialloy has no other presence within the state.  Although a single contact with the forum state is sufficient to support personal jurisdiction over a nonresident defendant, the quality of the contacts in this case do not rise to the level of purposeful availment.  See Bearry, 818 F.2d at 374 ("If the contact resulted from the defendant's conduct and created a substantial connection with the forum state, even a single act can support jurisdiction." (emphasis added)).  Indeed, it appears that Specialloy permissibly structured its dealings with Southern Copper to avoid being haled into court in Texas.  See Stuart v. Spademan, 772 F.2d 1185, 1190 (5th Cir. 1985) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

See Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113-16 (1987); Felch v. Transportes Lar-Mex SA DE CV, 92 F.3d 320, 329 n.20 (5th Cir. 1996).

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.