Maria Hernandez VALDEZ, Plaintiff,

v.

KRESO, INC., et al., Defendants.

No. 4:00–CV–1757–A.

United States District Court,
N.D. Texas,
Fort Worth Division.

May 4, 2001.

Jimmie A. Franklin, Law Office of Jimmie A. Franklin, Arlington, TX, for Plaintiff.

Dennis M. Conrad, Kirkley Schmidt & Cotten, Fort Worth, TX, for Defendants.

### MEMORANDUM OPINION and ORDER

McBRYDE, District Judge.

## I.

### Background

This action was instituted November 1, 2000, by the filing of a complaint by Maria Hernandez Valdez ("plaintiff"), individually and as next friend of Edgar Reza, a minor, against Kreso, Inc. ("Kreso") and Traileze Veterinary Products, Inc. ("Traileze").[1] Plaintiff sought recovery from Kreso and Traileze for damages allegedly suffered by reason of the exposure in August 1997 of her son, Edgar Reza, to a product that had been sold for use as an animal dip. Kreso and Traileze moved for dismissal on the ground that the court lacked jurisdiction over their persons. By memorandum opinion and order and final judgment signed March 28, 2001, the court granted the motion to dismiss and ordered the action dismissed for lack of personal jurisdiction.

On March 29, 2001, the court ordered plaintiff and her counsel, Jimmie A. Franklin, ("Franklin") to appear before the court at 10:00 a.m. on April 25, 2001, to show cause why sanctions should not be imposed against them for violating Federal Rule of Civil Procedure 11(b) in the respects mentioned in the order. Franklin responded by filing at 9:41 a.m. the morning of the hearing a document titled "Plaintiff and Jimmie A. Franklin's Response to Show Cause Order" and by giving testimony at the hearing, at which he and plaintiff both appeared. Pursuant to a directive given by the court to Franklin at the hearing, Franklin filed the day following the hearing a written memorandum of law related to two legal issues pertinent to whether Franklin and his client complied with their Rule 11 obligations.

The court has concluded that Rule 11 sanctions should be imposed on Franklin, as provided in this memorandum opinion and order, but that no sanctions should be imposed on plaintiff.

## II.

### Pertinent Provisions, and Goal, of Rule 11

Subdivision (b) of Federal Rule of Civil Procedure 11 reads in pertinent part as follows:

(b) REPRESENTATIONS TO COURT. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass

---

1. The complaint also named "Lee Drug Company" and "Lee Drug Company d/b/a Kreso, Inc." as defendants. By their motion to dismiss, defendants established that "Lee Drug Company" was a name previously used by Traileze Veterinary Products, Inc.

or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; ....

▇ Compliance with Rule 11 is measured by an objective standard of reasonableness under the circumstances. *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir.1992) (discussing the pre–1993 version of Rule 11). The "formed after inquiry reasonable under the circumstances" language of the post–1993 version causes the objective standard to persist. *See Gurary v. Winehouse*, 235 F.3d 792, 797 (2d Cir.2000).

The court may enter an order on its own initiative describing the specific conduct that appears to violate subdivision (b) and directing an attorney or party to show cause why it has not committed such a violation. FED.R.CIV.P. 11(c)(1)(B). Once a party and his attorney have been given notice and a reasonable opportunity to respond, the court, if it determines that subdivision (b) of Rule 11 has been violated, may impose an appropriate sanction upon the attorney or party who committed the violation. FED.R.CIV.P. 11(c). "When imposing sanctions, the court shall describe the conduct determined to constitute a violation of [the] rule and explain the basis for the sanction imposed." FED.R.CIV.P. 11(c)(3). The part of Rule 11 pertaining to the nature of the sanctions to be imposed

will be discussed at a later point in this memorandum opinion and order.

When applying Rule 11, the court should bear in mind that it is "aimed at curbing abuses of the judicial system." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). And, as the Fifth Circuit explained in *F.D.I.C. v. Calhoun:*

> The Federal Rules of Civil Procedure are designed to ensure the just, speedy, and inexpensive determination of civil claims in federal courts. FED.R.CIV.P. 1. One way the rules forward these goals is to impose a duty to base claims upon factually and legally supportable grounds and to punish litigants and lawyers who unreasonably pursue frivolous suits.

34 F.3d 1291, 1296 (5th Cir.1994).

Because of the indication in the record of this action that Franklin and his client violated their certification obligations under Rule 11(b), the court entered an order on its own initiative describing the specific conduct that appears to violate the rule and directing that Franklin and his client show cause why they had not violated the rule in those respects.

### III.

*Franklin Has Committed Serious Violations of Rule 11(b)*

A.  *The Mere Bringing and Maintenance of This Action in This Court Violated Rule 11(b).*

▇ This was the second action Franklin brought for plaintiff against Kreso and Traileze based on the same set of facts. The first was brought against Kreso and Traileze and other parties in a state district court in Fort Worth, Texas, in September 2000. Kreso and Traileze contested in the state court the power of a court of Texas to exercise jurisdiction over their

persons. Affidavits and related documents were filed in the state court establishing that the persons of Kreso and Traileze are not subject to the jurisdiction of a Texas court. After considerable court activity related to the in personam jurisdiction question, the state court signed an order on October 19, 2000, dismissing plaintiff's actions against Kreso and Traileze for lack of personal jurisdiction. No appeal was taken from that ruling. Before he filed the instant action, Franklin received, in the form of filings by Kreso and Traileze in the state court action, affidavits and other information that established that Kreso and Traileze had not engaged in any activities that would allow a Texas court to exercise jurisdiction over their persons.

Yet, less than two weeks after the dismissal of the state court action, Franklin filed this action in the Fort Worth Division of this court (which, as to this diversity action, is a Texas court, effectively the same from an in personam jurisdiction standpoint as the court that had dismissed the action less than two weeks earlier). On January 17, 2001, Kreso and Traileze filed their motion to dismiss this action for lack of personal jurisdiction. The motion alleged facts that clearly explained why preclusion prevented this court from exercising jurisdiction over the persons of defendants:

> 2. Plaintiff earlier sued these Defendants on the same set of alleged facts in a state district court in Tarrant County, Texas, Cause No. 67–178360-99, *Maria Hernandez Valdez, Individually, and as next Friend of Edgar Reza, a Minor vs. Marshall Grain Company, Inc., et al.,* 67th Judicial District Court, Tarrant County, Texas. Defendants filed special appearances challenging personal jurisdiction on the grounds that they lacked sufficient contacts with the state of Texas to allow a court in Texas to exercise personal jurisdiction over them consis-

tent with the due-process clause of the 14th Amendment. Plaintiff opposed Defendants' special appearances. After full and fair litigation of the issue of personal jurisdiction—including months of extensive written discovery, written depositions and oral depositions, two continuances granted to Plaintiff to conduct discovery, extensive legal briefing, and a full evidentiary hearing—the 67th District Court granted Defendants' special appearances and dismissed the claims against them for lack of personal jurisdiction. Plaintiff had the right to appeal that dismissal but chose not to.

> 3. The ruling of the 67th District Court that these Defendants are not subject to personal jurisdiction in the state of Texas on this Plaintiff's claims should be enforced and given effect by this court under the doctrines of issue preclusion, collateral estoppel, claim preclusion, or res judicata.

Mot. of Kreso and Traileze to Dismiss at 2–3. The motion was accompanied by full documentation establishing the merit of defendants' preclusion pleas on the personal jurisdiction issue.

Included among the documents that were filed with the motion were copies of the state court affidavits and documentation that established that defendants have not had contacts with Texas sufficient to authorize a Texas court to exercise jurisdiction over their persons. Those affidavits were supplemented by new affidavits filed with the motion establishing, and supplementing, the same facts. Kreso and Traileze asserted those facts as another reason why this court did not have in personam jurisdiction.

■ Franklin was not deterred. Instead, he filed a response in opposition to the motion to dismiss for lack of personal jurisdiction, urging that this court could

and should exercise jurisdiction over the persons of defendants. Franklin put in the response a section bearing the title "The State Court Decision Does Not Bar Plaintiffs [sic] Claims Of Joint Enterprise Liability, Partnership and Agency Liability," but he did not provide any legal authority that supported the position he took in that section—that the prior holding of lack of personal jurisdiction could be re-litigated in this court simply because a new theory of recovery was alleged. He failed in his arguments to recognize that personal jurisdiction was the precise issue that the state court decided and to which preclusion, whether called res judicata or collateral estoppel, applies. He ignored the rule of long standing "that principles of res judicata apply to jurisdictional determinations—both subject matter and personal." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n. 9, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). And, he did not mention, much less try to distinguish, the holding of the Fifth Circuit in *Deckert v. Wachovia Student Financial Services, Inc.* that a ruling of a court of the State of Texas that it does not have in personam jurisdiction has preclusive effect in a later-filed suit in a Texas federal district court where in personam jurisdiction again is questioned. 963 F.2d 816, 818–19 (5th Cir.1992). Before Franklin filed his response to the motion to dismiss, *Deckert* was called to his attention in the motion.

■ At the April 25 hearing the court ordered Franklin to file a memorandum by which he was to provide to the court any authority that would tend to support the proposition that the state court dismissal for want of personal jurisdiction does not preclude retrial of the personal jurisdiction issue in another suit filed in a Texas court on the basis of the same facts. In a memorandum Franklin filed April 26, he advised the court that he had been unable to find any such authority. In the final analysis, Franklin's only excuse for disregarding the state court ruling against his client on personal jurisdiction was that, according to him, he thought preclusion did not apply because he had alleged in this action a joint enterprise theory of recovery that he had not alleged in the state court action. Such a contention is frivolous considering the well-accepted and long-established proposition that the test is whether the same nucleus of operative facts exist, not whether a new theory of recovery has been added. *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 934 (5th Cir.), *cert. denied*, 527 U.S. 1004, 119 S.Ct. 2339, 144 L.Ed.2d 236 (1999). Conduct such as Franklin's in filing this action after a state court had already ruled that a Texas court could not exercise personal jurisdiction over defendants can, standing alone, be basis for Rule 11 sanctions. *See Mareno v. Jet Aviation of Am., Inc.*, 970 F.2d 1126, 1128–29 (2d Cir.1992).

Franklin disregarded the affidavits and related documents that established lack of contacts by defendants with the State of Texas. The section of the response that purportedly presented the position of Franklin's client on the "contacts with Texas" issue failed to come to grips with the facts known to Franklin. In its entirety, that section of the response reads as follows:

## THIS COURT HAS CONSTITUTIONAL PERSONAL JURISDICTION OVER DEFENDANTS

In a federal diversity action, a nonresident defendant is amenable to personal jurisdiction ... to the extent permitted by a state court in the state in which the federal court resides. *Bullion v. Gillespie*, 895 F.2d 213, 215 (5th Cir.1990).

Texas long-arm statute allows a Texas court to exercise jurisdiction over a nonresident who 1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in Texas, or 2) commits a tort in whole or in part in this state. Tex.Civ.Prac. & Rem.Code Ann. § 17.042 (West 1986).

In the instant case, the evidence is clear that because of the joint enterprise liability and agency and partnership liability alleged by Plaintiffs in their Original Complaint herein, any tort committed by Lorenz in furtherance of the joint enterprise and/or as agent or partner of Kreso, may be imputed equally to Kreso as a matter of Texas law.

"The theory of joint enterprise is to make each party thereto the agent of the other and thereby to hold each responsible for the negligent act of the other." *Esquivel v. Murray Guard, Inc.*, 992 S.W.2d 536 at 542 (Tex.App.—Houston [14th Dist.] 1999).

As such, long-arm jurisdictional [sic], including minimum contacts are satisfied by these claims and the joint enterprise evidence.

Pls.' Resp. to Mot. to Dismiss at 8–9. This response was made notwithstanding the absence of any evidence that either defendant had contracted by mail or otherwise with any Texas resident involved in this litigation to perform any contract in whole or in part in Texas or that would support a contention that either of these defendants, directly or vicariously, committed a tort in whole or in part in this state.

By the time Franklin filed the response to the motion to dismiss, he knew for certain, if he did not already, that his personal jurisdiction contention was meritless. Yet he persisted. The court must conclude that he did so with an improper purpose, such as to harass defendants and cause them needless increase in the cost of litigation. His personal jurisdiction claims had no basis in existing law. Franklin already knew that the facts upon which he relied would not support exercise by a Texas court of jurisdiction over defendants. He did not need to make inquiry on those subjects because he had firsthand knowledge that his assertion that this court had personal jurisdiction over defendants was without the slightest merit.

No reasonable attorney would have asked this court to exercise personal jurisdiction over defendants. Certainly, no ethical and competent attorney would have pursued the matter of personal jurisdiction once his hand had been called, as was Franklin's, by the motion to dismiss. The certifications Franklin made in reference to the personal jurisdiction issue by signing, filing, and urging the complaint and the response to the motion to dismiss were false as to the deemed representations contemplated by the (1), (2), and (3) parts of Rule 11(b).

B. *The Making by Franklin of False Allegations of Fact Violated Rule 11(b).*

■ The complaint is a thirty-one page document containing sixty-five numbered paragraphs of allegations. The record indicates that false allegations were made in most of those paragraphs—paragraphs 2, 3, 4, 5, 10, 15, 18–30, 33, 34, 35, 37, 38, 41–50, 53, 54, 55, 61, and 62 contain false allegations. There is no need to discuss in detail all of the inaccurate allegations. A few will suffice to demonstrate the gravity of Franklin's violations of the deemed certifications he made when he signed, filed, and urged the complaint:

1. In paragraphs 2 and 4, Franklin alleged that Kreso and Traileze each is a Nebraska corporation, domiciled and having its principle place of business in Ne-

braska. Franklin knew from papers filed in the state court before he filed this action that neither Kreso nor Traileze even existed as a corporation, each having been dissolved in 1993. He also knew from those documents that Kreso and Traileze had no place of business, both having ceased doing business in 1993.

2. In paragraph 10 the allegation is made that Kreso and Traileze "were at the time of this occurrence [August 3, 1997], and are presently engaged in the business of designing, manufacturing, formulating, supplying, labeling, testing, inspecting, selling, marketing, distributing, and conspiring to illegally manufacture, supply and distribute a highly potent poison called Kreso D . . . ." Franklin knew before he filed this action that all those allegations were false, having been informed during the pendency of the state court action of the dissolution of Kreso and Traileze in 1993 and that neither of them engaged in business activities after the dissolution.

3. In paragraph 19, Franklin alleged that Kreso and Traileze were engaged in a joint enterprise with another person, Lorenz, "to continue to profit and make money from the continued manufacture and sale of Kreso Dip No. 1, to which each party had an equal right of control over the subject matter of this agreement." When Franklin filed this action he had no knowledge of any agreement between Kreso and Traileze, on the one hand, and Lorenz, on the other, that could be reasonably characterized as an agreement of the kind described in paragraph 19 of the complaint. Similar false allegations related to relationships between Kreso and Traileze, on the one hand, and Lorenz, on the other, are scattered throughout the complaint.

4. In paragraph 28, Franklin alleged that "[t]he 'Kreso Dip' that Plaintiff was exposed to was manufactured, designed, sold, marketed, formulated, labeled, tested, inspected and/or distributed by [Kreso and Traileze] as a result of their conspiracy and illegal scheme to continue to allow the manufacture, supply, and distribution of Kreso Dip No. 1 in Texas. . . ." Franklin knew before he filed the complaint that those allegations were false.

5. In paragraph 29, and in other parts of the complaint, Franklin alleges that the exposure of Edgar Reza to the animal dip in August 1997 was the result of a conspiracy between Kreso, Traileze, and Lorenz. Franklin had information before the complaint was filed that would cause a reasonable person to question the accuracy of any such conspiracy theory. Put another way, Franklin had no evidence that would cause a reasonable person to conclude that such a conspiracy existed.

6. In paragraph 30, Franklin alleged that "the 'Kreso Dip' in question was defective and unsafe for its intended purposes at the time it left the control of [Kreso and Traileze]. . . ." Franklin knew before he filed the complaint that Kreso and Traileze never had control over the product that allegedly caused plaintiff's injury.

7. In paragraph 33, Franklin alleges that Kreso and Traileze "expressly and impliedly warranted to the Plaintiff that the 'Kreso Dip' was of merchantable quality and was safe and fit for the purposes intended when used under ordinary conditions and in an ordinary manner." Franklin knew that this allegation was false before he made it.

At the April 25 hearing, the court questioned Franklin about his justification for making the above-described allegations of fact, and similar ones. Franklin responded with inconsistent answers. The nearest any of his answers came to having a relationship to the true facts were the expressions by Franklin of reliance on a purchase

agreement that Kreso and its owners entered into with Lorenz in June 1993. The record shows that, indeed, there was such an agreement. App. to Defs.' Br. in Supp. of Their Mot. to Dismiss, Ex. A, Ex. 6. However, there is nothing in that agreement that would provide the slightest justification for the factual allegations made by Franklin in the complaint. By that agreement, Kreso sold to Lorenz certain assets used by Kreso in its business of selling animal health products. Other than the mention of "Kreso Dip No. 1" in the "Inventory" section of the agreement,[2] *id.* at 6 (App.32), the only mentions made in the agreement of a product used as an animal dip are in paragraphs 13 and 14, which read in their entirety as follows:

13. *Restriction on Advertising and Labeling.* With respect to any advertising and labeling plates referred to in subparagraph (b) of Paragraph 1 that relate to Kreso Dip No. 1, Buyer acknowledges and agrees not to use said plates as they currently exist but to change them to eliminate any reference to approval by the Environmental Protection Agency ("EPA") of Kreso Dip No. 1. The parties agree that if the EPA subsequently approves the use of Kreso Dip No. 1, then, upon written evidence of such approval to Seller, Buyer may use the advertising and labeling plates as they currently exist.

14. *EPA Approval of Kreso Dip No. 1.* The parties acknowledge that EPA approval for Kreso Dip No. 1 expired effective May 12, 1993. Upon consummation of the purchase and sale hereunder, Buyer agrees that it will not use the name "Kreso Dip No. 1" on any animal health product. Buyer may use the name "Kreso" but shall otherwise conform the labels on Kreso Dip No. 1 to eliminate any reference to the approval by the EPA of Kreso Dip No. 1. If the EPA hereafter approves the use of Kreso Dip No. 1 then, upon furnishing prior written evidence of such approval to Seller, Buyer may use the name "Kreso Dip No. 1".

*Id.* at 4–5 (App.35–36). Those contractual provisions provide no evidentiary support for the factual recitations Franklin made in the complaint by which he instituted this action. No reasonable attorney would attribute to those provisions alone establishment of any of the factual allegations Franklin made in the complaint. Nor would forgiveness of a debt as part of the consideration for the purchase agreement be thought by any reasonable attorney to constitute an ongoing financial reward related to manufacture or sale of the animal dip product in question.

The certifications Franklin made in reference to the facts upon which his client based her claim of liability against Kreso and Traileze, as set forth in the complaint, were false. He knew that he was making false factual allegations when he made them. No reasonable attorney would have made those factual allegations after the slightest inquiry, much less a reasonable inquiry.

C. *The Legal Contentions Alleged in the Complaint Violated Franklin's Certification Obligations Under Rule 11(b).*

■ In an earlier part of this memorandum opinion and order, the court has explained how Franklin violated his "legal contentions" certification obligation related to the in personam jurisdiction issue.

---

**2.** Plaintiff does not suggest that the animal dip plaintiff and her son used in August 1997 was from inventory purchased by Lorenz in June 1993. Indeed, the record establishes that none of the animal dip was a part of the inventory at the time of the June 1993 agreement. App. to Defs.' Br. in Supp. of Their Mot. to Dismiss, Ex. A at 6 (App.10).

Here, the court discusses the violations by Franklin of his certification obligations relative to the various legal theories of liability alleged by him in the complaint.

The basic legal fallacy in the allegations of the complaint is the assertion that Kreso and Traileze are liable to plaintiff for an injury her son allegedly suffered from use of an animal dip in August 1997. The subsidiary legal allegations that lead to that ultimate assertion are unfounded as well. Essentially, the subsidiary allegations are that Kreso and Traileze are jointly and severally liable for the conduct of whoever manufactured and sold the animal dip for use by plaintiff and her son as a result of (a) a conspiracy to which Kreso and Traileze were a part, (b) the fact that Lorenz was agent, authorized representative, and long-time business partner of Kreso and Traileze, and (c) a joint enterprise between Kreso, Traileze, and others. No reasonable attorney would have believed, after reasonable inquiry under the circumstances, that the claims and legal contentions related to the theories of liability alleged in the complaint against Kreso and Traileze were warranted by existing law, considering the known facts. Franklin simply has failed to call the court's attention to any fact that would permit there to be an honest assertion of the existence of any of those theories of liability against Kreso and Traileze in relation to the injury alleged to have been suffered by plaintiff's son. The deemed certifications made by Franklin relative to those legal theories were violated, because none of those legal theories could be thought by an attorney to be warranted by existing law "after an inquiry reasonable under the circumstances."

## IV.

### Sanctions to be Imposed

■ Franklin represented to the court at the April 25 hearing that plaintiff was unaware of Franklin's filing of this federal court action. The court has no reason to question the accuracy of that representation because the court can readily appreciate from Franklin's other conduct that he might well file a lawsuit without knowledge of the person on whose behalf it was filed. Therefore, the court is not imposing sanctions on plaintiff. However, the court has concluded that sanctions should be imposed on Franklin.

So far as the court can determine, Franklin has been attorney of record in only one other case before the undersigned judge. The court viewed Franklin's conduct in that case to be violative of Franklin's deemed certifications under Rule 11(b), with the consequence that the court *sua sponte* initiated and concluded Rule 11 sanction proceedings against Franklin. The sanction imposed on Franklin in that case was a requirement that he pay to the Clerk the sum of $500. In explanation, the court said "[s]uch a sum will remind Franklin of the very serious obligations he has under Rule 11 and will hopefully deter his filing in the future of frivolous papers, whether in this case or any other." *Abdeljalil v. City of Fort Worth*, No. 4:98–CV–342–A, slip op. at 7 (N.D.Tex. Dec. 22, 1998), *aff'd*, 234 F.3d 28 (5th Cir.2000). The reminder given by Franklin in the earlier case did not deter his filing in the future of frivolous papers, as the court had hoped. Rather, Franklin's conduct in the instant case is a more egregious violation of Rule 11 than was his conduct in the earlier case.

■ Moreover, the court considers inescapable the conclusion that the instant action was filed and pursued for an improper purpose, such as to harass or to cause needless increase in the cost of litigation. In addition to the inferences that naturally

flow from the mere fact that Franklin so blatantly violated his Rule 11 obligations, Franklin provided a further indication of his motive when he said at the April 25 hearing that the fact that there was insurance made him name everyone conceivably liable. As often happens in products liability cases, Franklin seems to have operated in this case on the belief that he did not need to have valid factual and legal grounds for naming Kreso and Traileze in the suit so long as he could show some relationship between them and the offending product, no matter how tenuous. Joinder of non-liable parties pursuant to such a tactic proves all too often to be but a form of extortion. The cost of defending actions such as this and the uncertainties inherent in our imperfect legal system enable an attorney who pursues such a tactic to extract "nuisance" settlements by the mere naming of parties to the litigation without regard to the merits of the claims. In this case, the cost in fees and expenses of the attorneys hired to obtain dismissal of this frivolously filed action totaled about $11,600.[3] That is in addition to the tremendous legal expense defendants must have incurred to cause the state court action to be dismissed. The court is not requiring Franklin to reimburse his opponent for legal expenses incurred in this case, but is taking that loss into account in determining the sanctions to be imposed. And, the court is bearing in mind that Rule 11 sanctions are "aimed at curbing abuses of the judicial system," *Cooter & Gell,* 496 U.S. at 397, 110 S.Ct. 2447, and that, more generally, the Federal Rules of Civil Procedure "are designed to ensure the just, speedy, and inexpensive determination of civil claims in federal court." *F.D.I.C.,* 34 F.3d at 1296. The court has concluded that the sanctions it is imposing

on Franklin in this case are the least severe sanctions adequate to serve the purposes of Rule 11. The sanctions imposed are limited to what the court believes are sufficient to deter repetition by Franklin of inappropriate conduct of the kind in which he engaged in this case and to deter comparable conduct by others similarly situated. The court concludes that the following sanctions should be imposed on Franklin:

The court ORDERS that Franklin pay to the Clerk of the United States District Court for the Northern District of Texas the sum of $6,000 as a sanction for his violations of Federal Rule of Civil Procedure 11(b) in the respects mentioned above, and that the $6,000 sanction be paid by Franklin in the following installments on the dates specified below:

(a) $1,000 is to be paid by Franklin to the Clerk no later than June 1, 2001;

(b) $1,000 is to be paid by Franklin to the Clerk no later than July 31, 2001;

(c) $1,000 is to be paid by Franklin to the Clerk no later than October 1, 2001;

(d) $1,000 is to be paid by Franklin to the Clerk no later than November 30, 2001;

(e) $1,000 is to be paid by Franklin to the Clerk no later than January 29, 2002; and

(f) $1,000 is to be paid by Franklin to the Clerk no later than April 1, 2002.

The court further ORDERS that Franklin be publicly reprimanded for his conduct violative of Rule 11(b), and that the publication of this memorandum opinion and order serve as publication of the reprimand.

---

**3.** The attorneys' billing statements indicate that individuals who owned shares of stock in

the companies before they were dissolved are footing the bill. Court Ex. 1.